MARY CARROLL, Respondent, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

St. Louis Court of Appeals. Argued and Submitted December 6, 1910. Opinion Filed February 21, 1911. Motion for Rehearing Filed March 3, 1911. Motion for Rehearing Overruled and Opinion, as Modified, Refiled May 2, 1911.

1. APPELLATE PRACTICE: Conclusiveness of Verdict. Where the evidence is conflicting, the verdict of a jury is conclusive upon the appellate court, but it does not foreclose inquiry as to the same issues on a retrial, after reversal.

2. ———: Trial Practice: Challenge of Juror: Specific Objection. The reason for the rule requiring one challenging a juror to specify the ground of the challenge is to enable the trial court, as well as the appellate court, to know exactly what is required to be ruled upon.

3. .———: ———: ———: ———: Challenge ,"for Cause:" Sufficiency of Challenge. Where a juror, on his *voir dire* examination, confessed he had entertained a feeling of prejudice against defendant, and the court thereupon excused him, but after-

wards recalled him for further examination, and the juror then reiterated his feelings towards defendant, and at the conclusion of his examination the court inquired of counsel for defendant if he desired to challenge the juror "for cause," to which counsel for defendant responded that he did, it is obvious that the challenge was grounded upon prejudice, which the juror confessed he had entertained towards defendant, since no other disqualification was suggested, and the trial judge clearly had such ground in mind when he overruled it, and hence the challenge "for cause" was sufficient.

4.  **JURY: Challenge of Juror: Rules of Decision.** The right to a fair and unprejudiced jury lies at the very foundation of the right of trial by jury, and where a venireman is challenged, if there are any doubts as to his qualifications, they should be solved against him.

5.  ———: ———: **Peremptory Challenge.** In a civil case, the law requires a panel of eighteen qualified men, from which each party has the right' to peremptorily strike off three names, and each party is entitled to exercise his peremptory challenges from a panel of competent, qualified jurors; so that, where a challenge for cause is erroneously overruled and the party challenging is compelled to use one of his three peremptory challenges to get rid of the unqualified juror, it cannot be said that, because the jury is accepted and its verdict is unanimous against such challenging party, he was not prejudiced by the error in denying his challenge for cause.

6.  ———: ———: **Challenge for Cause: Prejudice: Facts Stated.** In an action against a street railway company for injuries to a passenger by the alleged premature starting of a street car, a juror on his *voir dire* examination, in answer to a question as to whether he had any ill feeling against defendant, stated that he would be against it, because he had some experience, in that, when he was a passenger, many times, the operatives didn't stop for him to alight in the way he thought they ought to. In answer to questions by the court, the juror said that he had been prejudiced against defendant, but that he wouldn't have any prejudice against rendering a decision in the case either way. He further stated that his feeling was one of ill will against defendant. On objection, the court ordered him to stand aside; but, on ascertaining that the only remaining member of the panel was disqualified, the court recalled the juror, and on his statement that he could give defendant a fair trial, and that the feeling he previously entertained had been removed, overruled defendant's challenge for cause. *Held*, that, considering the fact that prejudice is a thing too strong in its hold to be easily thrown off, the court was not warranted in ruling that the jurors's prejudice had been dissipated and that he could serve as a fair-minded

Carroll v. United Railways Co.

and unprejudiced juror, and hence the court erred in over-ruling defendant's challenge for cause.

7. **TRIAL PRACTICE: Demurrer: Evidence Considered it Most Favorable Light: Appellate Practice.** In determining the question whether or not a demurrer to the evidence should be sustained, the evidence for plaintiff should be considered as though it stood uncontradicted.

8. **RELEASES: Rescission: Fraud and Deceit: Misstatement: Opinions.** In order to avoid a release, fairly entered into, on the ground of fraudulent misrepresentations, it is necessary to prove there was a misstatement of a fact, not of a mere opinion, especially where such opinion is concerning something that is to occur in the future, the happening of which is beyond the control of the party making the representation; and statements made by a doctor to a patient as to the probable duration of the patient's confinement by reason of a broken limb and as to the length of time that would elapse before she could go about her business are merely expressions of opinion, and would not, if false, constitute a sufficient ground for the cancellation of a release made by the patient on the faith of them.

9. ———: ———: ———: ———: **Statement as to Permanent Disability.** Where a doctor, employed by a street railway company to attend a passenger injured on one of its cars, either knew or ought to have known that the neck of her femur was broken and that this would necessarily result in a shortening of the limb and permanent disability, but nevertheless informed her that she would be as well or as good as ever, that her leg would be as good as ever, in order to induce her to execute a release, she would not be bound by the release, unless she knew the nature and probable result of the injury and that it would probably result in a shortening of the limb; such statements being statements of fact and not of mere opinion.

10. ———: ———: ———: ———: **Question for Jury.** In an action for personal injuries, where the validity of a release executed by plaintiff was in issue, *held*, under the evidence, that the question as to whether a doctor employed by defendant made fraudulent misrepresentations of fact to plaintiff to induce her to execute the release was a question for the jury.

11. ———: ———: ———: **Essential Facts.** In order for one who has executed a release to obtain relief against it on the ground of fraudulent misrepresentations, he must show a state of facts from which these conclusions follow: That false representations of material facts were made to him; that he believed them to be true; that his reliance on them was an act of ordinary prudence; and that they influenced his action.

12. **CONTRACTS: Rescission: Negligence.** Courts do not make contracts for people, and if one can read, he must do so before executing a contract, and if, by negligence and indifference to his own interest, he permits himself to be overreached, the law affords him no redress.

13. **EVIDENCE: Hearsay.** Where correspondence between parties is not produced nor accounted for as lost, it is improper to permit testimony to be given as to the contents of such correspondence.

14. **PRINCIPAL AND AGENT: Attorney and Client: Releases: Authority of Attorney to Receive Tender: Question for Jury.** In an action for personal injuries, where the validity of a release executed by plaintiff was in issue, the attorney for plaintiff testified that he told the general attorney for defendant that he had a personal injury case against defendant which he would be glad to settle, and the general attorney thereupon referred him to the attorney in his office who had charge of such litigation, and that thereafter he (the witness) made a tender to such attorney of the amount paid by defendant to plaintiff as consideration for the release. *Held*, the question of whether such attorney, at the time of the alleged tender, was the agent or attorney of defendant in the matter of such tender was a question of fact for the jury.

15. **APPELLATE PRACTICE: Duty to Follow Controlling Decision of Supreme Court.** The Court of Appeals will follow the last controlling decision of the Supreme Court, rather than a contrary one by one of the Courts of Appeals.

16. **WITNESSES: Competency: Death of Agent Conducting Negotiations: Proviso to Section 6354 Construed.** The proviso to section 6354, Revised Statutes 1909 is to be construed liberally and to be interpreted more with a mind to its spirit than its letter, and, so interpreted, it excludes the living agent from testifying, when the agent with whom he negotiated is dead, and this is true as well when such deceased agent was the agent of an individual as when he was the agent of a corporation.

17. ——: ——: ——: **Proviso to Section 6354 Construed: Common Law.** Under the common law rule which prevented a party in interest from testifying, no notice was taken of the fact as to whether or not one of the parties to the contract in issue was dead, and, in so far as the proviso to section 6354, Revised Statutes 1909 disqualifies the surviving party as a witness when the other party to the cause of action or contract in issue is dead, it is an innovation upon, and outside of, the common law.

18. ———: ———: Death of Agent Conducting Negotiations. In an action against a corporation, for personal injuries, where a release was pleaded in the answer, and the reply alleged the release was obtained by fraudulent misrepresentations, the attorney for plaintiff was disqualified, under the proviso to section 6354, Revised Statutes 1909, to testify that he had tendered the amount received for the release to defendant's attorney having charge of the claim, where it was shown that such attorney had died before the trial.

19. RELEASES: Rescission: Question of Law: Statute: Trial Practice. Section 1812, Revised Statutes 1909 makes the question of rescission of a release a question of law, to be tried and determined in an action at law.

20.- ———: ———: Necessity of Tender: Pleading. Where a release, pleaded as a defense to an action at law for personal injuries, was attacked by the reply for mistake and false representations, under section 1812, Revised Statutes 1909, plaintiff was bound to aver and prove a tender, before suit brought, of the amount received therefor, or, in lieu thereof, to plead and prove facts showing that the amount would not have been accepted as tendered, and that the tender therefore would have been a useless act.

21. APPELLATE PRACTICE: Failure of Proof: Reversal and Remand Proper, When. Where the trial court erroneously admits evidence of a fact essential for plaintiff to prove to warrant a recovery, the judgment will not be reversed outright, but the cause will be remanded, since the ruling of the court made it unnecessary for plaintiff to introduce any other evidence he might have introduced to prove such fact.

22. RELEASES: Rescission: Tender: Deducting Amount Paid From Verdict: Necessity of Including Interest. In an action for personal injuries, where a release was pleaded in the answer, and the reply attacked the release for fraud, a verdict finding for plaintiff in a certain sum, after deducting the amount she had received as consideration for the release, was erroneous, as interest on such amount should have been allowed from the date of payment; and hence it is not correct to say that the legal effect of the verdict was that the jury, in assessing damages, had given defendant credit for the amount to which it was entitled.

23. PLEADING: No Pleading After Reply: Issues: Anticipating Defense. Matters alleged in a reply are at issue without any pleading to the reply by the defendant, since no such pleading can be filed, and the defendant is not bound to anticipate a defense made by the plaintiff to affirmative matter pleaded in the answer.

24. **RELEASES: Rescission: Tender: Not Waived by Pleading Release as Defense.** In an action for personal injuries, where plaintiff sought to avoid a release pleaded in the answer, the fact that defendant insisted on the conclusiveness of the settlement and release was not, of itself, evidence on which to base a claim that a tender of the consideration before suit brought was unnecessary, on the theory that it would have been refused.

25. ————: ————: **Instructions: Misleading Instructions.** In an action for personal injuries, where the answer pleaded a release and the reply sought to avoid the release on the ground of alleged fraudulent misrepresentations of defendant's doctor with respect to plaintiff's injuries, the court instructed the jury that, if they believed plaintiff was injured, and defendant, through its physician, took charge of her, and such physician, after making an examination, *assured plaintiff that no bones were broken, but that later on said physician, after making another examination of her person, reported to plaintiff that he had discovered that the thigh bone had been fractured by her fall, but that the bone had set itself and knitted nicely, and that within three or four months her leg would be as good as it ever was, and that she would be able to assume and perform the duties of her vocation as well as she did before her leg was broken,* and plaintiff, on the faith of such statement, *accepted a certain amount in settlement, and if the jury believe that such statement made to plaintiff by said physician was untrue and that she never recovered the use of her leg, but, on the contrary, was permanently disabled and that said physician knew, or should have known, that his said statement (if he made such statement) to plaintiff was untrue, and knew, or should have known, that plaintiff's disability, by reason of the fracture of her thigh bone, was not temporary but permanent, and knew or had reason to believe that plaintiff would rely on such statements in making a settlement with the defendant,* then the release was no bar to the action. *Held,* that the whole instruction was misleading, and was especially erroneous in incorporating the words "after making an examination of her person assured plaintiff that no bones were broken but that later on said physician, after ·making another examination of her person," for the reason that their tendency was to create the impression that a question of malpractice on the part of the surgeon was before the jury, or that his opinion as to the injury when he first saw plaintiff was wrong, such matters not being pertinent or proper to the consideration of the case.

26. **APPELLATE PRACTICE: Reviewing Instructions: Objections not Necessary.** Where exceptions are taken to instructions given, they are reviewable on appeal, without an objection having first been reserved thereto prior to their being given.

27. **RELEASES: Rescission: Mutual Mistake: Instructions.** In an action for personal injuries, where the reply sought to avoid a release pleaded in the answer on the ground of mutual mistake, an instruction asked by defendant to the effect that a mutual mistake as to the extent of time plaintiff would be incapacitated on account of her injuries is no ground for setting aside the release was a correct instruction, and the court erred in modifying it so as to make it read "that a mutual mistake *merely* as to the extent of time, etc.," as the insertion of the word "merely" tended to narrow the issue.

28. **APPELLATE PRACTICE: Considering Errors not Assigned.** Where, on appeal, a judgment is reversed, the court may, of its own motion, notice error not suggested by the parties, when such error, if unnoticed, might be repeated on the new trial, and compel another reversal.

29. **RELEASES: Rescission: Inconsistent Grounds: Pleading: Motion to Elect.** In an action for personal injuries, where the reply sought to avoid a release pleaded in the answer on the ground it was entered into as a result of mutual mistake and on the ground it was entered into as a result of fraudulent misrepresentations, defendant's motion to require plaintiff to elect upon which of her grounds of attack she would go to the jury should have been sustained, since the grounds are inconsistent.

Appeal from St. Louis City Circuit Court.—*Hon. Virgil Rule,* Judge.

REVERSED AND REMANDED.

*Geo. T. Priest* for appellant; *Boyle & Priest* of counsel.

(1) The court erred in overruling defendant's challenge for cause to juror, William Klasek, on his voir dire, on the ground that said juror was prejudiced against defendant. Heidbrink v. United Railways, 133 Mo. App. 40; Theobold v. Transit Co., 191 Mo. 428. (2) The court erred in overruling defendant's demurrers to the evidence. First: Because the evidence fails to disclose any mutual mistake of fact or any false or fraudulent representation was made by defendant. Second: Because the evidence shows that no representation was made with the intent to deceive. Third: Because the evi-

dence shows that no statement or representation was made with the purpose of having plaintiff act upon it. Fourth: Because the evidence shows that the alleged false representations were predictions and mere matters of opinion. 14 Am. and Eng. Enc. Law (2 Ed.), p. 23, p. 21, p. 33; Saunders v. McClintoch, 46 Mo. App. 225; McFarland v. Railroad, 125 Mo. 253; Homuth v. Railroad, 129 Mo. 629. Fifth: Because the evidence shows that at the time the alleged false and fraudulent representations were made, that they were not made with the knowledge that they were false. McFarland v. Railway, 125 Mo. 253; Homuth v. Railway, 129 Mo. 629. (3) The court erred in refusing to give at defendant's request, the following instruction offered at the close of all the testimony. "The court instructs you that there is no evidence that plaintiff refunded defendant the money she received on said release or tendered said sum to defendant, and therefore your verdict must be for the defendant." Althoff v. Transit Co., 204 Mo. 170; Whitewell v. Aurora, 139 Mo. App. 597.

*Joseph S. Laurie* for respondent.

(1) The trial judge believed the juror. He was the sole judge of credibility, and we submit that his finding, under such circumstances, should be conclusive. Baldwin v. State, 12 Mo. 223; McCarty v. Railroad, 92 Mo. 536; State v. Cunningham, 100 Mo. 382; City v. Sykes, 191 Mo. 76; State v. Vickers, 209 Mo. 12; State v. Gordon, 191 Mo. 114; Eckert v. Transfer Co., 2 Mo. App. 36; Spangler v. Kite, 47 Mo. App. 230; State v. Van Wye, 136 Mo. 227; State v. Brown, 188 Mo. 451; Glasgow v. Railroad, 191 Mo. 347; Joyce v. Railroad, 129 Mo. 344; Montgomery v. Railroad, 90 Mo. 446; Ruckenberg v. Railroad, 161 Mo. 70; Coppersmith v. Railroad, 51 Mo. App. 357; State v. Darling, 199 Mo. 188; State v. Church, 179 Mo. 629; State v. Sykes, 191 Mo. 76. (2) Appellant's challenge of Juror Klasek was not specific, and is, therefore, entitled to no consideration in this court. State

v. Taylor, 134 Mo. 109; State v. Reed, 137 Mo. 125; State v. Albright, 144 Mo. 638; State v. Soper, 148 Mo. 217; State v. Evans, 161 Mo. 95; State v. Forsha, 190 Mo. 296; State v. McCarver, 194 Mo. 717; State v. Meyers, 198 Mo. 225; State v. Miles, 199 Mo. 530; State v. Woolley, 215 Mo. 620; State v. Crow, 209 Mo. 316. (3) The error, if any, in overruling said challenge, was harmless. Deidman v. Young, 87 Mo. App. 530; State v. Coleman, 186 Mo. 151; State v. Brown, 188 Mo. 451; Elliot's Appellate Procedure, Sec. 632; Obrien v. Vulcan Iron Works, 7 Mo. App. 257; Hegney v. Head, 126 Mo. 619; Williamson v. Transit Co., 202 Mo. 345; Joyce v. Railroad, 219 Mo. 344; Pemiscot Land & Lumber Co. v. Cooperage Co., 126 S. W. 218; Hencke v. Railroad, 69 Wis. 401. (4) Inasmuch as Mr. Laurie was not a party to the action, and had no interest therein, he was a competent witness at common law. The statute in question is an enabling act, and does not disqualify any person as a witness who was a competent witness at common law. Jenkins v. Emmon, 117 Mo. App. 1; Banking Co. v. Loomis, 140 Mo. App. 62; Jackson v. Smith, 139 Mo. App. 691; Bailey v. Bailey, 139 Mo. App. 176; Darks v. Scudder-Gale Co., 130 S. W. 430; Angel v. Hester, 64 Mo. 142; Meyer v. Thieman, 90 Mo. 433; Bates v. Forcht, 89 Mo. 121; Leach v. McFadden, 110 Mo. 584; Linn v. Hockaday, 162 Mo. 111; Bank v. Slattery, 166 Mo. 620; Weiermueller v. Scullin, 203 Mo. 466. (5) The testimony of Mr. Laurie, to the effect that Mr. Easley was the attorney of defendant in charge of its personal injury litigation, is wholly uncontradicted, and a tender to him, as such attorney, was sufficient. It has been so decided by this court. Austin v. Transit Co., 115 Mo. App. 146; Bertrand v. Transit Co., 108 Mo. App. 70. (6) While we insist that Mr. Laurie was a competent witness to prove the tender, and that the tender to Attorney Easley was sufficient, we submit that the competency of Mr. Laurie and the authority of Mr. Easley, are, under the circumstances, immaterial, for two reasons: First.

It was shown upon the trial that a tender to defendant or any officer of the company with authority to accept or reject the same, would have been useless and nugatory. Enterprise Soap Works v. Sayers, 55 Mo. App. 15; Harwood v. Dunn, 41 Mo. App. 48; Woods v. Thompson, 114 Mo. App. 38; Girard v. St. Louis Car Wheel Co., 123 Mo. 358. Second. Conceding, for the sake of the argument, that no tender was made, still appellant has no ground of complaint. As shown by the verdict, plaintiff was injured by defendant's negligence, and the release wrongfully obtained, and the jury, in assessing plaintiff's damages, gave defendant credit for the $250 paid her in consideration of the release, thereby, in legal effect, returning to defendant the amount paid for the release. Girard v. Car Wheel Co., 123 Mo. 358; Railway Co. v. Goodholm, 61 Kan. 758. (7) It was unnecessary for us to prove fraud in order to avoid the release, but we submit that the fact that Dr. Rowe concealed from plaintiff, until after the settlement, as she testified, and as the jury believed, that he knew her leg was shorter and was bound to become more so, made representations to her wholly inconsistent with such knowledge, shows actual fraud on his part. He concealed the true condition from her, and he knew that his statements to her that her leg would be as good and strong as ever within three months or within any time, were not true and could not be true. Railroad v. Brown, 21 Tex. Civ. App. 568; Railroad v. Fowler, 69 C. C. A. 106; Viallet v. Railway Co., 84 Pac. 496; Bjorkland v. Seattle Co., 55 Wash. 439; Henry v. Building Assn. 156 Cal. 667; 14 Am. and Eng. Ency. of Law, 41, 95, 97; Whart. & Stille Med. Juris., Sec. 500, 501; Blair v. Railroad, 89 Mo. 383.

REYNOLDS, P. J.—Action by plaintiff for damages for personal injuries alleged to have been sustained by her in the city of St. Louis, on the 25th of November, 1904, while alighting from a street car on which she was a passenger, the car and the line upon which it was run-

ning being at the time operated by defendant. The action was instituted November 15, 1905. Averring that her occupation was that of a trained nurse and that as a result of her fall from the car she was severely and permanently injured and prevented from pursuing her avocation, plaintiff demands damages in the sum of six thousand dollars.

The answer, denying every allegation of the petition, pleads contributory negligence on the part of plaintiff. For a further defense, defendant avers that plaintiff, on the 10th of December, 1904, had duly signed and delivered a writing to defendant whereby, in consideration of $250 to her paid by defendant and the payment by defendant of the expenses incurred by plaintiff for medical attention given by a physician and surgeon in and about the treatment of her alleged injuries, she had forever released and discharged defendant from all liability accrued and thereafter to accrue on account of the alleged injuries.

The reply, denying contributory negligence, while admitting plaintiff had executed the release, averred that it was in consideration of the $250 alone and not in payment by defendant of the expenses incurred to the surgeon for his services, averring that plaintiff was under no obligation to pay the surgeon by reason of the fact that he was the regular salaried physician of defendant and through his assistant attended upon plaintiff at the instance and request of defendant. It is further averred that after plaintiff had met with the accident which is the foundation of her claim, the agents of defendant took charge of her, carried her to her home, placed one of its physicians, Dr. Rowe, an assistant of Dr. Brokaw, its chief surgeon, in charge of her; that Dr. Rowe at once made an examination of her person for the purpose of ascertaining the extent of her injuries and reported to plaintiff that the only injury sustained by her was the straining of the muscles and ligaments of the leg, together with nervous shock and that she would be all

157 App.—17

right within two weeks; that at the expiration of the two weeks, plaintiff being still confined to her bed, Dr. Rowe, who had in the meantime continued to attend upon her, made another examination and told her that her thigh bone had been fractured but that the bone had set itself and had knitted nicely and that within four months her leg would be just as good and strong as it ever was and that she would then be able to assume and perform the duties of her avocation as well as before; that at the time when this report was made to her by Dr. Rowe, defendant's claim agent called at her home and proposed to settle with her upon the basis of her loss of time and wages for the period of four months, estimated at $250, and plaintiff avers that relying solely and implicitly upon the representations made to her by defendant's physician as to the nature of her injuries, that the bone was properly set and well knitted, and that she would be all right again in four months, she accepted the offer, signed the paper referred to in the answer and received from defendant the $250; that at the end of four months instead of finding herself well she was worse and discovered that the representations made to her by defendant's physician as aforesaid were untrue; that the neck of her thigh bone was broken, her knee severely injured, and that the thigh bone had not set itself properly, had not knitted properly, and in consequence of her injuries her injured leg is several inches shorter than the other leg and she cannot put her foot to the ground without great pain, and that she is now and will continue to be a helpless cripple during the rest of her life. It is then charged that Dr. Rowe knew or ought to have known that the representations made by him as to her injuries and condition were untrue and that he knew or ought to have known that in consequence of the injuries she would be permanently disabled, and that the physician made such representations to her either through mistake as to the facts or with the intent to deceive the plaintiff and that the so-called release was signed by her either as the result of a mutu-

al mistake as to the character and extent of her injuries or was fraudulently and wrongfully procured from her and should therefore be held for naught. The reply further avers a tender of the $250, with interest, before the institution of the suit, and the refusal of it by defendant, plaintiff averring that she "has ever been and is now, ready to refund the said sum."

There was a verdict for plaintiff for $5000, from which after interposing a motion for new trial and that being overruled, saving exceptions, defendant has duly perfected its appeal to this court.

In view of the points made by learned counsel for appellant, it is unnecessary to set out the evidence as to the accident. While it was conflicting on the fact as to whether plaintiff attempted to get off the car after it had stopped or while it was in motion, it is sufficient to say that so far as relates to that issue, the verdict of the jury for plaintiff is conclusive upon this court, not foreclosing inquiry as to the accident in the event of a retrial. We will only notice such proceedings at the trial and such of the testimony as necessary to the determination of this appeal.

Learned counsel for appellant asks for a reversal on four points: First, that the court erred in overruling defendant's challenge for cause of a juror on his voir dire, on the ground that that juror was prejudiced against defendant; second, the court erred in overruling defendant's demurrer to the evidence because that evidence fails to disclose a mutual mistake of fact or any false or fraudulent representation made by defendant; it shows that no representation was made with the intent to deceive; that no statement or representation was made with the purpose of having plaintiff act upon it; that the alleged false representations were predictions and mere matters of opinion and that at the time the alleged false and fraudulent representations were made they were not made with the knowledge that they were false. The third error assigned is the refusal of the

court to give an instruction to the effect that there was no evidence that plaintiff offered to refund to defendant the money she had received on the release or tendered that sum to defendant. The fourth error assigned is to the action of the court in giving instruction No. 2 on behalf of plaintiff.

*First.* To the understanding of the first point made, it will be necessary to set out exactly what occurred in connection with the impanelling of the jury, and we take that verbatim from the abstract. It is as follows:

"During the examination of the panel of eighteen jurors on their voir dire, William Klasek, juryman No. 3 of said panel, made the following answers to questions propounded by the respective counsel in said cause, and by the court:

Mr. Priest: Do any of you gentlemen entertain any feeling say of ill-will against this defendant for any reason at all that would incapacitate you from sitting as a juror in the trial of this cause?

Juror Wm. Klasek: I would be against them, because I have had some experience. I had rheumatism in my foot, and have been a passenger on the car many times and they didn't stop for me the way I thought they ought to, because I couldn't jump off, and they didn't stop for me the way they ought to. I think that is my feeling against them.

Mr. Priest: I think the juror ought to be excused. He is fair enough to say he has a feeling against the company.

The Court: Do you want to examine him (addressing Mr. Laurie, of plaintiff's counsel).?

Mr. Laurie: Notwithstanding the fact that you feel they have not been sufficiently careful in your case in allowing you time to alight from the car, do you feel that on the trial of the case here, where the question was whether the railway company had allowed a passenger time to alight, or had started the car while she was in the act of alighting, and you heard the evidence on both

sides, is there any reason why you could not bring in a verdict fairly and impartially, one way or the other? Is there any reason why you would be prejudiced against the railway company on account of the manner in which it has treated you?

Juror Wm. Klasek: No, sir.

The Court: You say you have prejudice against the defendant?

Juror Wm. Klasek: I had at that time, but now I wouldn't have any prejudice against rendering a decision either way.

Mr. Priest: You do entertain a feeling of ill-will. You say that, Mr. Klasek? You don't think they handle cars just right to suit your case. Isn't that it?

Juror Wm. Klasek: Yes, sir.

Mr. Priest: And you do have a feeling against them on that account?

Juror Wm. Klasek: Yes, sir.

Mr. Priest: A feeling of ill-will?

Juror Wm. Klasek: Yes, sir.

The Court: You may stand aside. (Addressing sheriff.) Call another juror.

The Sheriff: We have but one more juror, your Honor, and he is in the employ of the defendant.

The Court: Mr. Juror, do I understand you to say that that feeling of ill-will that you did have, as I understand you?

Juror Wm. Klasek: Yes, sir.

The Court: But you have none now?

Juror Wm. Klasek: No, I haven't none now.

The Court: Do you think you could give this defendant a fair trial?

Juror Wm. Klasek: Yes, sir.

The Court: You think that you could give it just as

Juror Wm. Klasek: Yes, sir.

fair a trial as you could give a citizen?

The Court: Then why do you think that you have a

feeling of ill-will against them? You say you did have. Has that feeling been removed?

Juror Wm. Klasek: Yes, sir; it has been removed.

The Court: That has been removed?

Juror Wm. Klasek: Yes, sir. It is several years ago. I think I have forgotten it.

Mr. Priest: Does your Honor change your ruling?

The Court: No, I was going to let him stand aside on general principles. I did not think he was not a competent juror at the time. I did not make any ruling. Do you want to challenge him for cause now?

Mr. Priest: Yes, sir.

The Court: I will overrule the challenge.

To which action of the court in overruling its said challenge of said juror for clause the defendant, by its counsel, then and there duly excepted."

It appears that Mr. Klasek was thereupon included in the panel of eighteen veniremen submitted to counsel from which to select the jury and that counsel for plaintiff struck off the names of three men, but left Mr. Klasek on the list. Thereupon counsel for defendant, using one of the three peremptory challenges to which he was entitled, peremptorily challenged Mr. Klasek.

It will be noticed that the learned trial judge at first practically sustained this challenge and excused Mr. Klasek, excluding him from the panel. Under the exigencies of the situation, as but one other venireman was present and he an employe of defendant corporation, the court called back this challenged venireman, who before then had been told to stand aside, and under the test of examination this man said that his prejudice had arisen over a matter which had transpired some time before and that he believed that he was now free from prejudice.

It is urged by learned counsel for plaintiff that by challenging "for cause" merely, and not particularizing or specifying the cause, counsel lost the benefit of the challenge. Counsel has cited several cases claimed to

support his proposition, that a mere challenge "for cause" is not sufficient, among others State v. Albright, 144 Mo. 638, l. c. 642, 46 S. W. 620; and State v. Evans, 161 Mo. 95, l. c. 108, 91 S. W. 590. In the former case our Supreme Court has said: "The mere challenge 'for cause' amounted to nothing." In the Evans case it is said: "Challenging a juror 'for cause' will not do, that the cause of challenge must be as distinctly specified as the objection to the introduction of evidence." There is no room for contention over the correctness of this as a general rule, but its application, as in all rules, must depend on the facts in any particular case. The reason for definiteness in objection as well as in challenge is that the trial court as well as this court may know exactly what is required to be ruled upon. Hence the importance of specifying the ground of the challenge. That is what the decision in State v. Myers, 198 Mo. 225, 94 S. W. 242, illustrates. In the case at bar, it is obvious that the challenge was grounded upon prejudice, confessed by the juror to have been entertained by him. No other disqualification is suggested and the challenge could have been aimed at no other ground. It is clear that the learned trial judge had the ground of the challenge—prejudice—clearly in mind when he overruled it.

Counsel on each side refer us to the decision of this court in Pemiscot Land & Cooperage Co. v. Davis, 147 Mo. App. 194, 126 S. W. 218, as supporting their respective contentions. Counsel for respondent quotes in support of his contention this language from the opinion in that case: "That it does not appear that the juror challenged was of the panel that was selected to try the case or whether he was peremptorily challenged by the respondents, so that this assignment of error cannot be considered." All that is there meant is that if the juror challenged for cause was not afterwards excluded from the panel by peremptory challenge, the challenge for cause was waived. [Williamson v. St. Louis Transit Co.,

202 Mo. 345, 100 S. W. 1072.] The record was silent on this in the Pemiscot case, nor did the party save the point by including it in the motion for a new trial. In the case at bar it does appear that Mr. Klasek was peremptorily challenged and that the overruling of the challenge for cause has been duly saved both by exception and in the motion for a new trial. The result of overruling the challenge for cause was that counsel for defendant was compelled to use one of his three peremptory challenges, to which he was entitled by law, to get rid of this disqualified juror, whom he had duly challenged. Counsel for respondent urges that the verdict of the jury was unanimous and that defendant had accepted the jury and was not hurt. That argument will not do, as it assumes the whole point in issue.

The right to a fair and unprejudiced jury is at the very foundation of the right of trial by jury. If there are any doubts as to the qualifications of a venireman, they should be solved against the one challenged. A party submitting his case to the arbitrament of a jury is entitled to a jury, every member of which is a qualified juror—above all doubt or question. The law requires a panel of eighteen qualified men—in a civil case—from which the jury is to be struck. Even when the eighteen qualified men are selected, the law gives each party to the action the right to strike off three names without requiring cause for the act. Each party is entitled to exercise this peremptory challenge of three men out of a panel of competent, qualified jurors. That is the law. Mr. Klasek stated, at the outset, and voluntarily, that he had an old prejudice against defendant.

In Theobald v. Transit Co., 191 Mo. 395, l. c. 428, 90 S. W. 354, quoting approvingly the rule announced by Mr. Chief Justice Marshall of the Supreme Court of the United States, in Burr's case, that light impressions which may be fairly supposed to yield to the testimony offered, which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objec-

tion to a juror, but that those strong and deep impressions which will close the mind against the testimony that may be offered in opposition to them, which will combat that testimony and resist its force, do constitute a sufficient objection to him, and referring to many cases holding that an unbiased jury is of the right of all litigants, our Supreme Court has said (l. c. 428) : "The streams of justice should be kept pure and free from prejudice. In the administration of justice, the courts and all judges, as well as the jurors, should, as far as human precaution can avail, be kept free from bias or prejudice."

Prejudice itself is of such an insidious character that it is rarely safe to allow any man to judge as to his own mental attitude toward it when he has admitted that it had existed. If it had disappeared before he was called and examined as a prospective juror, it is rather significant that when asked generally as to his qualifications, he volunteered the statement that he was prejudiced and followed that up by telling from what it arose. No matter whether it was entirely baseless, and that very often is true of all prejudice, it was then sufficiently present in the mind of this venireman, at the very time he was first undergoing examination, to make him as a frank and truthful man, declare it. A man may have an impression one way or the other, even an opinion; that can be reached and dealt with and possibly removed so that he will be a fair, competent juror. Not so with prejudice. It is too strong in its hold to be easily thrown off. Its baneful presence, working on us secretly and insidiously, may, unconsciously to our own selves, mold our minds. It is too strong a passion to warrant any court in saying that under examination, conducted as this was, it has disappeared and that he who confessed to its existence when faced by its subject, in this case the defendant, could truthfully say, it had been completely dissipated; could take his seat in the jury box as a fair-minded, unprejudiced juror; a juror with a clean mind,

free from any trace of prejudice or bias. The challenge should have been allowed. The action of the learned trial court in first excusing this juror was correct. His subsequent action in compelling defendant, in order to rid itself of this venireman by exercising its right of peremptory challenge against him, was prejudicial and reversible error.

*Second.* The second point relied on by counsel for appellant, as before stated, revolves around the action of the court in overruling defendant's demurrer to the evidence, and is bottomed on the claim, to put it briefly, that the evidence fails to show facts sufficient to overturn the release.

In the opinion which we originally filed, we set out the evidence of plaintiff and defendant. We have concluded that it is of no general interest or value to the profession nor assistance to the trial court, if a new trial is had, to embody it in this modified opinion. Neither the court nor counsel on either side will be aided by its repetition here. It is sufficient to say of that part of it bearing on the treatment of plaintiff and of matters leading up to and connected with the execution of the paper claimed to be a release, that as before stated, Mrs. Carroll was a professional nurse, engaged in the business of nursing ladies after confinement. When she was carried to her home after the accident, Dr. Rowe appeared by direction of defendant, he being one of its regular staff of surgeons, and attended her. The plaintiff was a large, fleshy lady, weighing about 200 pounds and between sixty and sixty-five years of age. Dr. Rowe on his first examination, found she had been hurt in one of her lower limbs; manipulated it with his hands; measured it; tried to see if it worked or moved; found that it would not; told her that she would be all right in about ten days; that she was suffering more from nervous shock than anything; did not think any bones were broken. At the end of about two weeks, plaintiff, still suffering and unable to move her limb, had her sister

Carroll v. United Railways Co.

telephone to Dr. Rowe to bring some other physician with him that could find out whether her limb was broken. The next morning Dr. Rowe brought Dr. Kleinfelder, another of the surgeons in the employ of defendant. These two surgeons examined plaintiff, measuring and manipulating the injured limb, and Dr. Rowe told her he would call in the morning and report the result. This, plaintiff testified, was exactly two weeks after she had sustained the injury. Dr. Rowe called the next morning and that day or a day or two following (on this date there is a conflict of testimony) the claim agent of defendant called, the money was paid to plaintiff and the release signed. Without setting out the testimony as to what took place between plaintiff, Dr. Rowe and the claim agent, it is sufficient to say that these witnesses contradicted each other on most of the material matters on which they testified, plaintiff testifying that Dr. Rowe assured her that she would be as well as ever and could go about her business in three months, Dr. Rowe testifying that all he had stated to her about her ultimate recovery was merely stated by way of opinion.

It needs no citation of authorities to support the proposition that a release executed on the faith of representations or beliefs as to what will happen in a given case, representations of a future event, or a future happening, are not sufficient to avoid the release when executed fairly. The fact necessary to be proven, is the statement of a fact, not of a mere opinion; especially is it not to be based on a belief or opinion on something that is to occur in the future, the happening of which is beyond the control of the party making the representation. If all that was in this case was a mere statement of opinion of the doctor as to the probable duration of the confinement of plaintiff by reason of her broken limb, there would be no substantial evidence on which to sustain a verdict avoiding and annulling the release. There is evidence, however, on the part of plaintiff, and for the

purposes of this case we must take it as though it stood uncontradicted, to the effect that Dr. Rowe had told her that notwithstanding her injury she would be as well or as good as ever; that her leg would be as good as ever. Under the certain facts of this case, that could mean nothing but that there would be no shortening of the limb, no crippled condition, no permanent disability. That the injury she suffered resulted in an impacted fracture is not disputed. Nor is there any question but that an impacted fracture of this bone almost inevitably results in a shortening of the limb. Knowing the fact of an impacted fracture, it must be assumed that Dr. Rowe, granting that he was a competent surgeon, knew that that would have resulted in a shortening of this limb, as it did here, and that it was impossible for this plaintiff ever to become as well as ever, as good as ever, or as able to attend to her business as she had been before receiving the injury. If, therefore, Dr. Rowe, in effect, told plaintiff that she would suffer no permanent disability or impairment of the use of her limb, and made that statement as of one of fact and not mere opinion, and made it with a knowledge of her condition which he had or ought to have had, and made it with the intention of influencing plaintiff in her action in settling with the company, plaintiff is not bound by the release, unless she herself knew the nature and probable result of the injury and signed the release and accepted the money in question, knowing at the time either from her own experience or knowledge, or from what Dr. Rowe had told her, that her limb was broken, and that it would probably result in a shortening of the limb. These are matters to be submitted to the jury. Any and all statements of the doctor as to the length of time plaintiff would be laid up, how long she would be confined to her bed or to the house, how long before she could go about her business, can be and are no more than mere expressions of opinion.

The evidence, so far as concerns this feature, war-

ranted the submission of the case to the jury under proper instructions. In view of that, the demurrer interposed by defendant was properly overruled. We are not now considering the evidence as to tender which was admitted; in passing on the demurrer the trial court necessarily assumed that it had been properly admitted.

Before passing from a consideration of the evidence, we deem it proper to say that in a retrial of this case, if one is had, we can do no better than refer to the cases of McFarland v. Missouri Pac. Ry. Co., 125 Mo. 253, 28 S. W. 590; Homuth v. Metropolitan St. Ry. Co., 129 Mo. 629, 31 S. W. 903; Weik v. Advertising Co., 109 Mo. App. 6, l. c. 16, 84 S. W. 144; and Champion Funding & Foundry Co. v. Heskett, 125 Mo. App. 516, 102 S. W. 1050, as stating the principles of law which should govern in the trial thereof and in the matter of instructions to the jury. The latter case, it is true, is one between vendor and vendee and seeks rescission of a sale. But the law there given is applicable here. In fact, in support of his opinion the learned judge cites McFarland v. Railway, supra, a case before the enactment of section 1812 of our present statutes, where it was held that relief against a release was to be had in equity. Judge JOHNSON who delivered the opinion, speaking for the Kansas City Court of Appeals (l. c. 530-31), says, treating of one who would rescind a transaction, "He must show a state of facts from which these conclusions follow: first, that false representations of material facts were made to him; second, that he believed them to be true; third, that his reliance on them was an act of ordinary prudence; and fourth, that they influenced his action. All of these elements must exist to support a final conclusion that the transaction was the result of artifice and fraud practiced on him by the vendor. [Wannall v. Kem, 57 Mo. 478.]" That learned judge then continues, quoting part of a sentence, which we quote in full, italicizing the clause omitted, from Scholfield Gear & Pulley Co. v. Scholfield, 71 Conn. 1, l. c. 19:

"Deception accomplished by false statements is not excused by a groundless belief in their truth on the part of the man who makes them; *and amounts to legal fraud, if they are uttered to induce action on the part of another, from which loss naturally results,*" and he continues that where the statements are shown to have been palpably false, the vendor will not be permitted to shield himself by saying that he believed them to be true. Furthermore, it is to be borne in mind that courts do not make contracts for people. They must make their own contracts and if by negligence and indifference to his own interests one permits himself to be overreached, the law affords him no redress, because his own conduct is blameworthy. If he can read, he must read before he executes a contract. This plaintiff knew that she was settling her claim when she executed the release. To revoke it she must bring herself within the law so fully announced in the above cases.

*Third.* The third point relied on by counsel for appellant goes to the fact of the tender of the $250, it being urged that the court erred in refusing to instruct the jury that there is no evidence that plaintiff refunded defendant the money she received on the release or tendered said sum to defendant before suit and that therefore the verdict should be for defendant.

The action was commenced on November 15, 1905, went to trial on October 13, 1908, and the trial was concluded on October 14, 1908. The accident occurred November 25, 1904. It will be remembered that in her reply plaintiff avers that before the institution of the action she notified defendant that she repudiated the settlement and tendered back the sum ($250) with interest but that defendant refused to accept it or to reconsider her claim, and the reply continues that plaintiff states that she has ever been and is now ready to refund said sum. At the trial Mr. Laurie, one of the attorneys for plaintiff, took the stand and gave testimony tending to show that he had taken charge of plaintiff's claim in

September, 1905; that he went to the office of Boyle & Priest, general attorneys of defendant in St. Louis; there met Judge Priest; told him he had a personal injury case against the road which he would be glad to settle if he could do so, and Judge Priest referred him to Mr. Easley as being the attorney in their office who had charge of the litigation of the United Railways Company; that he accordingly saw Mr. Easley. Mr. Laurie thereupon testified as to a conversation which then took place between himself and Mr. Easley in which Mr. Easley referred him to the vice-president and general manager. He testified that after he had received a letter from the general manager in reply to his letter, he again saw Mr. Easley and made a tender which Mr. Easley declined. Neither the letter from Mr. Laurie to the vice-president nor that from the latter to Mr. Laurie was produced, or accounted for as lost, so that objection was very properly sustained to testimony as to the contents, and what the vice-president wrote to Mr. Laurie is out of the case. All this testimony about these conversations with Mr. Easley was objected to, it appearing that between the time of their occurrence and the trial of the case, Mr. Easley had died, his testimony not having been previously taken by deposition. The learned counsel for respondent contends with great learning and strenuousness that he was a qualified witness as to the conversations between himself and Mr. Easley; that Mr. Easley was shown to be in the employ of or connected with the firm that attended to all the business of the United Railways, and was the one who had particular charge of suits against defendant, and hence that lawful tender had been duly proven. He also argues, with equal learning and as strenuously, first, that the question of tender is immaterial in this case, because it had been shown at the trial that the tender to defendant or any of its officers would have been useless and nugatory, and, second, conceding for the sake of argument that no

tender was made, appellant has no ground for complaint.

This brings us to the consideration of the fact of tender as proven, and then as to whether a tender of the amount received, in an action at law as this is, is a prerequisite to the institution of the action to cancel the release, thus following the rather illogical order of learned counsel, for if no tender before action brought is required to be made in such case, it seems useless to discuss the question of whether one was made.

The only tender claimed was that by Mr. Laurie to Mr. Easley, proof of that resting alone on the testimony of Mr. Laurie. The question of whether Mr. Easley, at the time of the alleged tender to him by Mr. Laurie, was the agent, representative or attorney of defendant in the matter of that tender is a question of fact for the determination of the jury under proper instructions and under all the evidence in the case relating to that agency. [3 Am. and Eng. Ency. (2 Ed.), p. 317; Alspaugh v. Jones, 64 N. C. 29.] Mr. Easley was dead when this case came on for trial and his testimony had never been taken by way of deposition. If it be found as a fact that Mr. Easley was the agent of defendant, qualified to receive and consider the alleged tender, the question recurs as to whether, Mr. Easley being dead, Mr. Laurie was competent, qualified, to testify concerning the transaction relating to the tender between himself and Mr. Easley. In the opinion which we first filed in this case we said this: "We hold that within the spirit of (the proviso to) section 6354, Revised Statutes 1909, Mr. Laurie was disqualified to testify as to the tender to Mr. Easley. He is the one who undertook and carried on the attempted tender. If a contract or settlement had been made, he was the one who would have made it. Defendant, as a corporation, could only act through an agent. The plaintiff was acting through her agent. The agent of the corporation was dead, Mr. Laurie, living, cannot testify as to what took place be-

tween him and Mr. Easley in connection with this mat-
ter of the negotiation for a settlement or as to the fact
of tender. As far as concerns the fact of the tender hav-
ing been made before action brought, we therefore, hold
that the evidence given by Mr. Laurie as to this should
have been excluded, and hence that there is a failure to
show a lawful tender, any tender, made prior to the in-
stitution of this action."

The proviso to the section (6354) referred to reads:
"That in actions where one of the original parties to the
contract or cause of action in issue and on trial is dead
. . . the other party to such contract or cause of ac-
tion shall not be admitted to testify."

The learned counsel for respondent, attacking this
particular part of the opinion with great vigor by a mo-
tion for rehearing, urges by brief and argument in sup-
port of that motion, that this court gives no reason for
such conclusion and makes no attempt to show how Mr.
Laurie, who is neither a party to the contract or cause
of action and had no interest in the matter, is dis-
qualified by the statute; that no authority whatever is
cited by the judge who speaks for the court and no
allusion is made to the numerous decisions on the sub-
ject cited in respondent's brief. And he concludes: "We
can only account for this upon the theory that this por-
tion of our brief was overlooked." That learned counsel
submits that the part of the opinion above set out is di-
rectly in the teeth of previous decisions of this court,
the Kansas City Court of Appeals, the Springfield Court
of Appeals and the Supreme Court of this state, direct-
ing attention, by citation and quotation, to the decisions
upon which he relies. Learned counsel is in error in
thinking that we had overlooked that portion of his brief
bearing on this proposition. It not only was not over-
looked, but all the cases he referred to, as well as many
others outside of that very learned brief, duly examined
and considered. But as the statement and opinion in
the case was unavoidably very lengthy, we contented

157 App.—18

ourselves with the statement of the conclusion at which we had arrived, without citing the authorities on which that conclusion was based.

Taking up this point again, with the brief and argument in support of the motion for rehearing before us, we have concluded, even at the expense of brevity, to go into this matter at length.

Let it be borne in mind that while Mr. Laurie is not a party to the suit, he was the party to the negotiations beween himself and Mr. Easley concerning this very matter now in suit. As will appear by decisions later referred to, this is sufficient to bring that negotiation within the proviso, if other facts are present.

Here are the decisions and authorities relied on by counsel, and our view of them.

In Baer v. Pfaff, 44 Mo. App. 35, l. c. 40, it is announced that the test to be applied in determining the competency of the witness, the party with whom he had the transaction concerning which he is to testify being dead, is, "Would the plaintiff's clerks (the agents) have been competent witnesses at common law? They certainly would. They had no interest in the suit and there is no rule, that we are aware of, that would have disqualified them." It will be observed that this does not meet the statute. At common law, interest was the disqualification; the death of one of the parties had nothing whatever to do with the matter. As we will see hereafter, as held by our Supreme Court in numerous decisions, the question of interest of the party, when this proviso under consideration is to be interpreted, has nothing whatever to do with its interpretation or construction.

Leahy v. Simpson's Adm'r, 60 Mo. App. 83, rests for authority entirely on the decision in Baer v. Pfaff, supra.

Dawson v. Wombles, 104 Mo. App. 272, 78 S. W. 823, rests on Clark v. Thias, 173 Mo. 628, 73 S. W. 616, and we will consider that case later on.

Jenkins v. Emmons, 117 Mo. App. 1, 94 S. W. 812,

is not in point. There the witness was held competent to testify to the loss of a note, not to any transaction between him and the deceased. Whatever else is said there on other points in general discussion of the competency of witnesses is not only not germane to the question but not within the ruling in that case.

Columbia Brewing Co. v. Rohling & Menke, 133 Mo. App. 65, 112 S. W. 767, lends no support whatever to plaintiff's claim; on the contrary it is against that claim. It is there distinctly held (1. c. 67), as the result of the decisions of our Supreme Court, that " 'A party to a contract,' as the term is used in the statute, when considered with reference to the contract of a corporation, means the person who negotiated the contract rather than the corporation in whose name and interest it was negotiated (citing many cases). Under the statute excluding the surviving party to a contract from testifying after the death of the other party, the rule is, the death of the contracting agent operates to exclude the surviving party who contracted with him."

Bailey v. Bailey, 139 Mo. App. 176, 122 S. W. 1099, is not in point. The witness there offered and objected to had no part whatever either in the suit or its result, nor was he acting for either party in the negotiation.

Jackson v. Smith, 139 Mo. App. 691, 123 S. W. 1026, a decision rendered December 5, 1909, by the Kansas City Court of Appeals, does support plaintiff. It, however, is founded on the construction placed by the Kansas City Court of Appeals on the decision of the Supreme Court in Clark v. Thias, supra, as the Kansas City Court of Appeals understands it to have been interpreted in Charles Green Real Estate Co. v. Building Co., 196 Mo. 358, 93 S. W. 1111. We do not agree with the construction which that learned court has placed upon these two cases. We will presently take up these cases and give our understanding of what is there determined, in the light of Griffin v. Nicholas, 224 Mo. 275, 123 S. W. 1063, decided by our Supreme Court December 21, 1909.

Holding that Griffin v. Nicholas is the latest and controlling ruling, we follow it rather than that of the Kansas City Court of Appeals.

Darks v. Scudder-Gale Grocer Co., 146 Mo. App. 246, 130 S. W. 430, a decision by the Springfield Court of Appeals, is ruled by that court on the distinct ground that the proviso of the statute relates solely to actions on contracts and does not apply to actions in tort, which was the character of the case before that court.

Bates v. Forcht, 89 Mo. 121, 1 S. W. 120, while tending to support the view of learned counsel, cannot be reconciled with later rulings by the Supreme Court on this same proposition, although it is cited and commented on, in some of them even approvingly, in later cases.

Brim v. Fleming, 135 Mo. 597, 37 S. W. 501, in no manner aids plaintiff. The transaction there in suit was had between the agents of the parties to the suit. The court treats these agents as the parties to the contract; both were living, although one of the principals was dead. Quoting approvingly Banking House v. Rood, 132 Mo. 256, l. c. 262, 33 S. W. 816, as holding that a "'party to the contract' has been construed to mean the person who negotiated the contract rather than the person in whose name and interest it was made;" and Williams v. Edwards, 94 Mo. 447, 7 S. W. 429, as expressly holding that both parties to the action being alive, one of them will not be competent to testify if the agent who negotiated the contract for the other is dead, the court holds that to follow these rulings literally would exclude the witnesses. "But," says Judge MACFARLANE in Brim v. Fleming, supra (l. c. 606), "to give that construction to the statute, its spirit rather than its letter has been taken. . . . The exception is intended to avoid the injustice that would arise in admitting the testimony of one party when the other is dead. In case that injustice does not exist in any case, the exception would not apply."

Lynn v. Hockaday, 162 Mo. 111, 61 S. W. 885, is not in point and throws no light whatever on the question before us.

Clark v. Thias, supra, is one of those cases in which the Supreme Court has overlooked the fact considered and ruled in other and later cases, that the question of interest has nothing to do with the question of competency under this proviso. It is true that Judge Fox, who wrote the opinion, cites Stanton v. Ryan, 41 Mo. 470; Leahy v. Simpson's Adm'r, supra, and Baer v. Pfaff, supra, quoting from this latter at length, but he distinctly says that these cases are not in conflict on this proviso, with the decision of the court in Banking House v. Rood, supra, and as disposing of the matter he says (l. c. 646), speaking of the witness Martin, whose competency was challenged: "Martin was not a party in interest, either in the note or suit, hence, we are of the opinion that he was a competent witness." With these remarks of the learned judge as a key to his underlying thought, that is, that the interest of the witness was to be considered in determining his competency under the proviso, we think that the decision, as an authority on this proviso, is discredited by what is said by the Supreme Court in the later case of Weiermueller v. Scullin, 203 Mo. 466, 101 S. W. 1088, in which Judge Woodson, speaking for all the members of the court in banc, clearly and emphatically rules that the matter of interest has nothing whatever to do with this proviso and that cases which take interest into consideration as determinative of the question are not to be regarded as authority.

That the feature of interest or no interest was the controlling feature in the determination of Clark v. Thias is manifest by the reference to it by Judge Burgess, in Charles Green Real Estate Co. v. Building Co., supra, where at page 370, referring to Clark v. Thias, he says that it was there very properly held that

the witness was a competent witness "as he had no interest in the note, nor was he a party to the suit."

Charles Green Real Estate Co. v. Building Co., as we read it, furnishes no support to the claim of counsel. It is there held that as the agent of the defendant was dead, the agent of plaintiff could not testify to any conversation or negotiations had with the dead agent concerning the negotiation for the loan which was the subject of the action.

In Griffin v. Nicholas, supra, decided December 21, 1909, the question arose as to the competency of certain witnesses offered to establish a verbal contract made between these witnesses, parties to the suit, the contract, however, as to which they were called to testify, being a verbal contract, made between them and the deceased, the contract consummated by a deed. The matter in decision was whether this verbal contract between a deceased party and others, entered into or was in suit in the case before the court. If it was, then no one disputed the incompetency as witnesses of the survivors, who were parties to the suit; if it was not involved in the suit, no one questioned their competency. Judge VAL-LIANT, delivering the opinion of the majority of the court held (l. c. 287) that the contract referred to was not in issue and was not the cause of action; that the plaintiffs who were offered as witnesses and who had made the verbal contract with the deceased party are not seeking to have that contract vacated or set aside for any cause but are assailing the deed, and that the defendants are not asking to have the contract enforced or performed; hence he held, speaking for the majority of the court, that they were competent witnesses. Beyond this there is no discussion or decision on the matter of competency by Judge VALLIANT. It was not necessary on the view which he and the majority took of the contract; eliminating the contract, no one denied that the witnesses were competent. Judge LAMM, joined by Judges WOODSON and GRAVES, dissented, but the dissent was

solely on the question as to whether this verbal contract was involved in the issue, he holding that it underlaid the cause of action and was so much a part of that action that these witnesses were disqualified. Before arriving at this conclusion, however, Judge LAMM has very learnedly and necessarily discussed the proviso to section 6354, Revised Statutes 1909, quoting that proviso as bearing on the competency and qualifications of witnesses, a matter not considered or passed on in the opinion of the majority; therefore nothing said by Judge LAMM in his opinion, preliminary to the discussion of the matter in dissent, is at all in conflict with what the majority ruled on the matter over which the dissent arose. Hence we accept what Judge LAMM and Judge WOODSON have said of the decisions on the competency of witnesses, as correct statements of the interpretation of this proviso. Judge WOODSON has said in Weiermueller v. Scullin, supra, that the cases which take interest into consideration as determinative of the question are not to be regarded as authority; and Judge LAMM, in Griffin v. Nicholas, supra, says (1. c. 327), that no section of our statute has been oftener before the Supreme Court for construction than this section. "The obvious difficulty in its exposition has caused doubt and perplexity, springing from its general language and broad thought, in applying it to the varying phases of litigated cases; and its judicial history shows that its interpretation has not always been steady and certain." Citing several cases which have passed on this proviso, as having been either impliedly or expressly overruled by subsequent cases, the judge continues, commencing at the foot of page 327: "In the exposition of no section of the statute is there more call for the use of the just rule of interpretation that the spirit of the statute as well as its letter must be carefully looked to. [Wade v. Hardy, 75 Mo. 394, 1. c. 400 et seq.; Orr v. Rode, 101 Mo. 387, 1. c. 398 et seq.; Chapman v. Dougherty, 87 Mo. 617, 1. c. 626; Meier v. Thieman, 90 Mo. 433; Weiermueller v. Scullin, 203

Mo. 466, l. c. 474.] Keeping that rule in mind we have held the reason of the exception is well stated by Dr. Wharton to be, 'That when there is no mutuality there should not be admissibility, i. e., when the lips of one party to a contract are closed by death, then the other party should not be heard as a witness.' [Chapman v. Dougherty, supra, l. c. 621.] We take it the key-note to the right doctrine, the touchstone of correct interpretation in respect to the statute in hand, is: First, equality; second, as in the Statute of Frauds and Perjuries, to shut the door on false swearing. To determine whether the facts of a given case bring it within the reason of the exception, where the case is close, calls for nice discrimination." On consideration of Griffin v. Nicholas, we see nothing to sustain counsel for respondent in the opinions of either the majority or minority.

Counsel, referring to it as "a recognized authority," quotes 30 Am. and Eng. Ency. 999, as saying: "It (the contract or cause of action) does not include all contracts or causes of action with deceased persons which merely come incidentally into the action. The surviving party to a contract made with decedent is competent to testify concerning it when it comes incidentally into a suit on another contract as a matter of evidence." This is the quotation given by counsel. By reference to the work cited (2 Ed. p. 999), the whole paragraph from which this extract is taken (paragraph C) will be found to read as follows: "The term 'contract of cause of action in issue' means the same as contract or cause in dispute or in question, and includes as well the substantive issues made by the evidence as the formal issues made by the pleadings. But," and the paragraph then goes on with what plaintiff's counsel has quoted, namely, "it does not include all contracts or causes of action with deceased persons which merely come incidentally into the action. The surviving party to a contract made with a decedent is competent to testify concerning it, where it comes in-

cidentally into a suit on another contract, as a matter of evidence." This does not help plaintiff. The issue in the case at bar being whether plaintiff, having executed a paper which on its face destroyed her right of action and confessedly having received a consideration for the execution of the release, it became a material question in the case—a vital issue, to determine whether she had either tendered back what she had received under the release, or were the acts of defendant, through its agent, of such a character as to render a tender useless. In the case at bar, as preliminary to the right of rescission, a tender of the amount received, or proof of facts showing tender was unnecessary, because unavailable, lay at the very root of plaintiff's right to recover, notwithstanding the release. Mr. Laurie himself testified that he called on Mr. Easley, being referred to him by Judge Priest, on whom he had called with a view to a settlement of this claim of plaintiff, as the proper party with whom he should take up the matter.

These are the cases and all the authority relied on by the learned counsel for respondent. Carefully considered, we do not think they sustain his contention. While there are expressions in several of them which tend to sustain his view, we think that when the facts in each on which the expressions, or even decisions, are bottomed, are examined, there will almost invariably be found some one or more that stand out as the fact on which the decision has turned, other than the bald fact of the living agent negotiating with the dead agent over the matter in suit.

That the proposition which we make, that the later decisions, particularly those where the question of the effect of the proviso in case of dealings between agents of the parties is involved and which pass on the competency of the surviving agent to testify, the other agent being dead, tend to the rule that this proviso is to be construed liberally and to be interpreted more with a mind

to its spirit than its letter, we think will be demonstrated to be true by an examination of the authorities.

This section with this part of this proviso first appeared in our statutes in the revision of 1865, Revised Statutes 1865, sec. 1, chap. 144, p. 586. As there appearing the proviso read, "provided, that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, . . . the other party shall not be admitted to testify in his own favor." It will be noticed that in the proviso, as now in force, the words "to such cause of action" have been inserted between the words "other party" and "shall not be admitted;" the word "either" inserted between the word "testify" and the words "in his own favor;" and all of that part of it following the words "in his own favor" down to the words "and when an executor or administrator," added. Two years after its adoption, in Stanton v. Ryan, 41 Mo. 510, decided in 1867, Judge WAGNER says (l. c. 515) : "It cannot be gainsaid that if the defendant had given a full delegation of power to an ordinary agent to make a contract for and superintend the building, that such agent would have been competent to prove the contract when a dispute arose concerning the same, whether the person with whom he contracted was dead or not." No authority is cited by this learned judge for this statement. It must be admitted, however, that the very statement of a legal proposition by him ordinarily carries with it its own authority. Looking over the briefs of counsel in that case, we find no reference to any authority other than the statute itself. While it is true that Stanton v. Ryan has been cited as an accepted authority on this proviso in several cases, we think it very evident that this part of it is so entirely discredited in other and later cases, that it is no longer to be held as binding. This is the view taken of it by the Kansas City Court of Appeals in two cases, namely, Nichols, Shepard & Co. v. Jones, 32 Mo. App. 657, l. c. 665, and Robertson v. Reed, 38 Mo. App. 32, l. c. 37. In the latter case Judge Smith, deliv-

ering the opinion of the court, basing it on the authority of Williams v. Edwards, supra, and of the decision of the Kansas City Court of Appeals in Nichols, Shepard & Co. v. Jones, supra, holds that the agent is not competent to testify as to a contract made with the agent of another party, the latter agent being dead. That the Kansas City Court of Appeals is borne out in this construction of Stanton v. Ryan seems manifest on an examination and consideration of the decision of the Supreme Court in Williams v. Edwards, supra. In this case Judge SHER-WOOD, quoting 1 Wharton on Evidence, section 469, that "Under statutes which exclude the surviving party to a contract, the death of a contracting agent excludes the surviving party who contracted with him," says (l. c. 451) that this principle was recognized in Stanton v. Ryan, but he construes that decision as holding it applicable to a case where "the surviving partners were permitted to testify touching the facts constituting their cause of action, and so also was the defendant in rebuttal; but he was not permitted to testify respecting the special contract, which if enforced would have defeated the action of the plaintiffs." Judge SHERWOOD further says on page 452 that the same doctrine was announced in Butts v. Phelps, 79 Mo. 302. He then says: "The object of the statute is to guard against false testimony by the survivor, and in order to do this, it establishes a rule of mutuality by which, when the lips of one contracting party are closed by death, the lips of the other are closed by law. And this principle remains unaltered as well where the contracting agent of a corporation dies as where the contracting agent of a firm dies; and the dangers and the mischiefs of any other rule would be as great in the former as in the latter case." He then states the rule underlying the principle when the contracting agent is the agent of a corporation, namely, that it applies to the one as to the other. To quote Judge SHERWOOD, "It is easy to see that corporations would be without protection where others, in like circumstances, are fully

protected.   I believe the statute in theory and in reason is broad enough to include within its beneficent provisions, the contracting agent of a corporation, as well as the contracting agent of a firm." Curiously enough this decision in Williams v. Edwards has been construed in several cases, arguendo generally, as if the rule of exclusion applied only when the dead contracting agent was the agent of a corporation.   Such construction is the very opposite to the very point of the argument made by Judge SHERWOOD.   He assumes as a matter of course that the proviso excludes the agent of a partnership from testifying and holds that by analogy it should also exclude the agent of a corporation.   The decision falls very far short of holding that the proviso applies only in the case of the deceased agent of a corporation.   In point of fact it is directly contrary to any such holding.   Assuredly if the rule applicable to partnerships or their agents, or to one of the partners, is to be applied to corporations, on no possible principle can a different rule be invoked when it is applied to the agent of an individual.   There is no basis to be found in the proviso itself for any rule applying it to the agent of a firm, a partnership or a corporation, and denying it to the agent of an individual. To limit it to the corporation agent alone, as several of the cases seem to do, on the assumed authority of Williams v. Edwards, is a clear perversion of this leading and controlling decision.   This same learned judge in Ex parte Marmaduke, 91 Mo. 228, l. c. 257, 4 S. W. 91, has also said, referring to statutes concerning witnesses, that all statutes are to be "construed liberally; are to receive an equitable interpretation; whereby the letter of the act or section will be sometimes enlarged or sometimes restrained so as more effectually to meet the beneficial end in view, and prevent a failure of the remedy."

While it is true that the above quotation is in a dissenting opinion in the Marmaduke case, it is equally true that it not only announces an accepted canon of con-

struction, but the extract quoted has been lifted approvingly into the opinion of Judge BURGESS, speaking for the Supreme Court in Cramer v. Hurt, 154 Mo. 112, l. c. 118, 55 S. W. 258, and by Judge WOODSON in an opinion adopted by the court in banc in Weiermueller v. Scullin, supra.

We have before referred to what Judge MACFARLANE has said in Banking House v. Rood, 132 Mo. 256. In that case Judge MACFARLANE, discussing this same proviso, says (l. c. 261) that our Supreme Court has ever undertaken to conform its decisions to the spirit rather than to the strict letter of this statute, citing Orr v. Rode, 101 Mo. 398, 13 S. W. 1066. He further says: "The primary object and purpose of the law, evidently, was to remove the disabilities by which parties to the record and parties interested were, at common law, rendered incompetent to testify. The exception was intended to prevent injustice that would arise in permitting one party to the contract or cause of action to testify when the lips of the other are sealed in death. This equitable construction has been applied in a variety of cases (citing several). It will be observed that the proviso does not exclude the testimony of one party in interest when the other party in interest is dead, but confines the exclusion to a party to the contract or cause of action, while the body of the statute removes the disability of a person caused by his interest in the suit. The exclusion of the proviso is not as broad as the inclusion of the body of the act. Hence, an examination of the cases will show that 'a party to the contract' has been construed to mean the person who negotiated the contract rather than the person in whose name and interest it was made." This is quoted approvingly in McKee v. Downing, 224 Mo. 115, l. c. 140, 124 S. W. 7, and followed in Southern Commercial Sav. Bank v. Slattery's Adm'r, 166 Mo. 620, l. c. 633-4, 66 S. W. 1066.

Looking to the decisions in other jurisdictions, we find it stated in an accepted compilation that it has been

recognized as a rule of construction of such a statute that "a person competent within the letter of the statute may be incompetent within its spirit." [30 Am. and Eng. Ency. (2 Ed.), 983, citing Hudson v. Houser, 123 Ind. 313, and Latimer v. Sayre, 45 Ga. 468.]

We confess that it is very difficult to reconcile the decisions of our courts on this section and particularly on this proviso, and almost impossible to be sure which is to be accepted as the last, and hence, so far as we are concerned, the controlling ruling. The controlling rule we deduce for the construction of this proviso, on consideration of the great weight of decision, to state it briefly, is that not only the letter of the statute but also its spirit must be carefully looked to in its interpretation, and so interpretated it excludes the living agent when the agent with whom he negotiated is dead. That is undoubtedly the rule announced in Wade v. Hardy, 75 Mo. 394, l. c. 400; Chapman v. Dougherty, 87 Mo. 617, l. c. 626; Meier v. Thieman, 90 Mo. App. 433; 2 S. W. 435, and cases heretofore cited. Suppose in the case at bar that the positions were reversed; that instead of Mr. Easley having died, it had been Mr. Laurie. Could Mr. Easley have testified to transactions between them touching this tender or attempted settlement? On the authorities, we should unhesitatingly say, No. It is true that Mr. Laurie is not a party to the suit, plaintiff or defendant. It is however true that he was the party to the attempted negotiation with Mr. Easley. It is also true that the plaintiff is not a corporation; she is an individual who had acted and was acting through her agent, in this case her attorney, and was represented in this matter as completely and exclusively by him as a corporation possibly could be represented by its agent. What possible difference can it make that a corporation can act only through an agent while the individual can and did act pro se. In either case it was a negotiation carried on by agents, one of them now dead. That being so, should the other, living, be free to put his own version on the

transaction between him and the dead man, they being
the only parties to that transaction? Surely to allow
him to do so is contrary to the spirit of the proviso, the
spirit so often said by our courts to permeate it, that
death having closed the mouth of one, the law closes the
mouth of the other: one cannot speak, the other shall not.
So that the distinction made in some of the cases between
individuals and corporations when acting through agents
does not appear to rest on any sound basis. It is placed
on the ground that the artificial body, the corporation,
can only act by and through an agent. But it is not the
corporation which is dead; death struck the agent. In
Williams v. Edwards, supra, the argument was advanced
that the corporation having dissolved, was dead, and
hence that those contracting with it were not competent
to testify. The argument was dismissed by Judge Sher-
wood as too absurd for discussion, let alone for decision.

So we come back to the proposition that it is the
death of the party, agent or principal, with whom the
contract was made or the negotiation conducted that
closes the mouth of the other negotiating party. That
is the only solid basis on which to place an interpretation
of this proviso of this section of the statute, and that we
understand to be the controlling ruling of our Supreme
Court. The question of the interest of the parties in the
suit has nothing to do with it, save as affecting the cred-
ibility of the witness.

It is said in several of the cases that all that this
proviso does is to overturn the common law rule which
prevented the party in interest from testifying. This is
not accurate. The proviso does more than that. The
common law took no notice whatever, in passing on the
competency or admissibility of the testimony of a wit-
ness, as to the fact of death of the party with whom he
had negotiated, so that, in so far as our statute, by this
proviso, does take notice of this death, it is an innovation
upon, is outside of the common law.

The agent here was the attorney for the plaintiff, having charge of her case. An attorney in whose hands the cause has been placed is surely within this proviso as fully as any ordinary agent; within the proviso a party to the contract or negotiation. He was clearly a party to the negotiation; whether as an agent, or as a principal is immaterial: in either case he is disqualified to testify, being a party to that contract or negotiation, the other party to it being dead. He cannot testify to his negotiations concerning that claim had with the agent of the one against whom the claim is made, whether a corporation or an individual, that agent being dead. That is so, to repeat, not on the score of interest on the part of the agent, but for the very same reason, as remarked by Judge LAMM, that underlies and sustains the law covering frauds and perjuries, to prevent false swearing. It is no answer to this argument to say that the statute allows the interest of the party testifying to go to his credibility. That is not all that the spirit of this statute attempts to do; it is aimed, as before remarked, at preventing the survivor of the two parties to the contract making a case against his opponent, that opponent's agent being dead, by his testimony; not excluding him on account of interest, but on the ground that when one of the two negotiators is dead the other shall not be permitted to saddle on the other parties to the negotiation an obligation which rests solely on the testimony of the survivor as to what had taken place concerning it between him and the dead agent.

Our Supreme Court has held in several cases, that while the witness is disqualified from testifying as to the matter of the negotiation between him and the dead party, he is not incompetent or disqualified as a witness as to other matters taking place which did not occur between him and the deceased party or agent.

We conclude, on a review of the authorities, by holding as we did in our first opinion in this case, that within the spirit of the proviso in section 6354, Revised Statutes

1909 under consideration, Mr. Laurie was disqualified to testify to the alleged tender made by him to Mr. Easley in connection with the attempted settlement of this matter now in controversy.

We now come to the consideration of the necessity of a tender prior to action brought, in a case such as this, the reply setting up matter in avoidance of the release, that being available as a defense to be made by reply under the provisions of section 1812 of our present statutes.

When a release is set up in the answer, that section of the statute provides that the issue so raised shall be submitted with all the other issues to the jury, and that the jury should, by a general verdict, find upon all the issues "including the issue or issues of fraud so raised."

Prior to the enactment of that section, which first appears in our law in the revision of 1899, being there as section 654, our Supreme Court, in many decisions had held that in an action in which plaintiff sought to repudiate a settlement or release, that issue was to be tried as in equity: to be tried by the court as in equity; that the acquittance could only be rescinded by a court of equity, before judgment could be given on the cause of action released. Judge Goode, in State ex rel. v. Stuart, 111 Mo. App. 478, l. c. 493, 86 S. W. 471, has collated the cases and thoroughly discussed the principle underlying this class of defenses. So also has Judge Ellison, speaking for the Kansas City Court of Appeals, in Lomax v. Southwest Missouri Electric R. Co., 119 Mo. App. 192, 95 S. W. 945. Judge Fox, speaking for Division No. 2 of our Supreme Court, in Althoff v. St. Louis Transit Co., 204 Mo. 166, l. c. 171, 102 S. W. 642, and referring to Och v. Missouri, K. & T. Ry. Co., 130 Mo. 27, 31 S. W. 962, says that prior to the statute a release and discharge had to be set aside by a proceeding in equity. But the statute, formerly section 654, now section 1812, came in and changed this, making it lawful to attack a release or discharge by reply and in an action at law and submitting the question of fraud, practically the question of

157 App.—19

whether it should be cancelled and held for naught, to the determination of the jury, along with the determination of the other issues of the case. Thus the former rule, that the issue on the question of rescission and cancellation was to be tried and found by the court, as chancellor, apart from the issue as to damages, if a case seeking recovery for damages was before the court and it was claimed that the release discharged that cause of action, has been done away with and the validity or nullity of the release, and in effect its cancellation, has become a question of fact to be tried and determined as at law. Where the question of cancellation and rescission was held to be one to be determined as in equity, it may be said that while there is some apparent confusion in the decisions of our courts on the subject, the weight of them, when the question of the necessity of a tender before action brought was in issue, has been on the side of the necessity of a tender back of that which had been received under the release as preliminary to a right of recovery on the cause of action said to have been released.

Discussing the necessity of a tender, Judge BAR-CLAY, then a member of the Supreme Court, in Girard v. St. Louis Car Wheel Co., 123 Mo. 358, 27 S. W. 648, says: (l. c. 372) that it has been often held in other jurisdictions than that of Missouri, that a tender of money received by virtue of a release such as that before us, need not be made before bringing suit, where the release was obtained by fraud, but that it is sufficient to offer its return in the petition or reply and to account for it by the judgment, and he states this certainly to be the rule in equity in reference to rescission. Three of the seven judges of the Supreme Court dissented *in toto* from Judge BARCLAY. Judge MACFARLANE, with whom Judges BLACK and BRACE concurred, while concurring with Judge BARCLAY in the result, places the concurrence of himself and associates as to the tender on the ground that failure to plead or set up as a defense the lack of a tender barred defendant from making that defense on

appeal, and that the verdict affirmatively shows that the jury had allowed to defendant the amount paid under the release and that defendant was not injured. In Och v. Railway, supra, at page 46, Judge Burgess quotes from an unpublished opinion of Judge Macfarlane in the Girard case, to the effect that the general rule requires a tender prior to suit.

In Hancock v. Blackwell, 139 Mo. 440 1. c. 453, 41 S. W. 205, the rule is thus stated, referring to a case in which it is sought to avoid or rescind a release: "Where a party seeks to rescind the contract on the ground of fraud or imposition, he must at least tender a return of what he has received under it before he can maintain an action at law; and, in an action in equity, he must at least tender a return by his bill of complaint." This decision of Hancock v. Blackwell has been questioned in Courtney v. Blackwell, 150 Mo. 240, 51 S. W. 668, another branch of the same case, as we understand it, or the same case under another name, but not on this part of it.

In Lomax v. Electric R. Co., supra, Judge Ellison, referring to the decisions prior to the appearance of section 654 in the statutes of 1899, holds that according to them it was necessary before suing for rescission, to tender to defendant what had been received for such release, and he holds that the statute, now section 1812, does not change this.

In Althoff v. St. Louis Transit Co., supra, an action for damages, the defense a release, the reply attacking the release under section 1812, Judge Fox, quoting Judge Bliss, in the case of Jarrett v. Morton, 44 Mo. 275-6, to the effect that if the plaintiff would refuse the settlement he must put the other party in the same condition he was before it was made, approves this, citing authorities in support of it which hold that this rule applies to actions in which the plaintiff by way of reply attempts to rescind the contract under what is now section 1812, and says (1. c. 171) that there is no distinction between the appli-

cation of the rule as to tender before rescission of ordinary contracts and those contemplated by this section.

Jarrett v. Morton, supra, was an action at law *quantum meruit* to recover the services of a slave. In Deichmann et al. v. Deichmann, 49 Mo. 107, however, a case always referred to as a leading authority, a suit for the specific performance of a contract for the sale of land, and, of course, an equitable action, Judge BLISS, considering the point raised that no tender had been made before suit of the balance of the purchase money, says (l. c. 109) : "Ordinarily such tender or offer to pay is essential, upon the principle that one who seeks equity must do equity. But in the language of the Supreme Court of Ohio in Brock v. Hidy, 13 Ohio St. 306, 'this general rule is not invariable or without exceptions. And among the well-established exceptions to this rule is this, that when the vendor claims to have rescinded, repudiates and denies the obligation of the contract, placing himself in such a position that it appears that if the tender were made its acceptance would be refused, then no tender need be made by the vendee. In such a case it is enough if the plaintiff offer by his bill to bring in the money when the amount is liquidated and he has his decree for performance.' " Judge BLISS concludes that in the case before the court tender was "not only excused by the conduct of the defendant, but by the uncertainty as to the amount actually due," under which circumstances he holds that the tender was excused.

The latest decision on the necessity of a tender as requisite to a right of action that we have found is that of Noel v. Hughes, 152 Mo. App. 192, 133 S. W. 385. Judge JOHNSON, speaking for the Kansas City Court of Appeals and citing many cases, calling attention to the fact that the action pleaded is one at law for the results or consequences of a rescission, says that it is necessarily based on the ground that before bringing the action plaintiff had already exercised his right to rescind, and the learned judge says: "In order to maintain that kind

of an action, it was incumbent on plaintiff to plead and prove that he had seasonably offered to return to defendant the note and deed of trust he had been induced to purchase. He had to offer to restore the *status quo* before he could maintain an action at law for the consequences of a rescission."

Distinctly, section 1812 of our statutes makes the question of rescission of a release a question of law, to be tried and determined in an action at law.

Our own view is, that the weight of authority in our state is to the effect that at law, averment and proof of tender is required prior to the accrual of a right of action, unless excused by its uselessness or impossibility. As for illustration see Black River Lumber Co. v. Warner, 93 Mo. 374, l. c. 388, 6 S. W. 210, an action at law on a contract seeking damages for its breach. In that case Judge BLACK has said: "A tender would have been a costly, as well as an idle, ceremony, which the law does not require." But in cases in equity, the offer to do equity, the specific offer to refund made in the bill has generally, indeed almost universally in other jurisdictions and by accepted text-writers, been held sufficient, without a tender back prior to the institution of the suit. The question, as the matter is presented under the statute, section 1812, is to be determined by the construction that is to be placed upon that section. This statute now makes it a legal defense, to be set up by way of reply, the issue to be determined by a jury as in other actions at law. It would seem, under this and on principle, that the plaintiff in his reply asking rescission of the contract, should aver, and on trial prove, tender of the sum or value received in settlement under the release, as a prerequisite to the right of rescission. The great weight of authority in our state, both before and after the statute, certainly so holds: this subject to the exception that a tender is not required if it appears by pleading or proof, that tender would be a useless act; that it would not be accepted.

We are asked to reverse and not remand because of lack of proof of a tender. We decline to do that. The court admitted the evidence of a tender. This ruling of the court made it unnecessary for plaintiff to introduce any evidence she might have, showing that a tender would have been fruitless and hence unnecessary. It would be unjust to reverse and refuse to remand under such circumstances.

But the learned counsel for respondent argues that conceding for the sake of argument that no tender was made, appellant has no ground for complaint. In support of this counsel claims that in assessing plaintiff's damages the jury gave defendant credit for the $250 paid her in consideration of the release, thereby, as he claims, in legal effect returning to defendant the amount paid for the release, and that defendant suffered no loss or injury, citing in support of this Girard v. St. Louis Car Wheel Co., supra.

The verdict was for $5000 and is in this form: "We, the jury in the above cause, find in favor of the plaintiff—on the issues herein joined and after deducting the $250 already received assess her damages at the sum of $5000." The 10th instruction, as above noted, told the jury that if they found for plaintiff they would deduct the sum of $250 received by plaintiff from defendant at the date of the execution of the release. This instruction and consequently this part of the verdict are erroneous. If the jury found anything for plaintiff they should have deducted not only the $250 but interest on that. The averment of plaintiff in her reply is that she tendered not only the $250 at the date of the tender but interest on that amount to that date. So that in addition to the $250, interest on that should also have been allowed. Hence it is not correct to say, as is argued by the learned counsel for respondent, that the legal effect of the verdict was that the jury, in assessing damages, had given defendant credit for the amount to which, according to plaintiff's own statement in her reply, defend-

ant was entitled. The jury gave credit for the principal
alone, making no allowance for interest, and so they
were instructed. This was error. Counsel correctly
argue that interest is a creature of the statute; but that
is no reason why it should have been excluded from
consideration.

Counsel further argue that the fact that defend-
ant is in this action insisting on the conclusiveness of
the settlement and release is in itself evidence on which
to base a claim that tender before action brought was
unnecessary and would have been useless, and we are
told by that counsel that in holding to the contrary we
are in direct conflict with what is said by Judge MAC-
FARLANE in Girard v. St. Louis Car Wheel Co., supra
(1. c. 376). It is true that Judge MACFARLANE there
says that it may be reasonably inferred that a tender
would have been refused from the fact that defendant
is insisting on the validity of the release. That remark,
however, is to be taken in connection with the other
facts in the case, one of which, as dwelt on by Judge
MACFARLANE, and as we have before noted, was that
neither by the reply nor by objection at the trial was any
point made on the failure of a tender. Here there could
be no pleading by defendant to the reply—and the reply
averred a tender, so that the fact of tender was in issue.
True, the defendant in pleading the release, might have
set up failure to tender restitution, but it was not bound
to anticipate the defense of plaintiff to the release by
answer. We do not consider what is there said by Judge
MACFARLANE as controlling authority on this point for
two reasons: The facts there are not as here; nor do we
think that the opinion of Judge MACFARLANE goes as
far as counsel claims. It is to be considered in the light
of the facts in the case. It does not seem logical to as-
sume that because the defendant, defending against an
action, after that action had been instituted and after
being brought into court by process, would have declined
tender of restitution if made before. Men often take

positions after being brought into court that they would not have taken before that, if given the opportunity. We hold that on the pleadings and facts before the trial court there was nothing to show that a tender before action brought would have been unavailing.

*Fourth.* The fourth point relied upon by counsel for appellant, counts on alleged error in instruction No. 2, given at the instance of plaintiff. We give that instruction in full, italicizing the words objected to by counsel for appellant:

"2. And if the jury further believe from the evidence that when plaintiff was injured the defendant, through its servants, took charge of her and caused its own physician to attend upon her, and that said physician, after making an examination of her person, *assured plaintiff that no bones were broken, but that later on said physician, after making another examination of her person, reported to plaintiff that he had discovered that the thigh bone had been fractured by her fall, but that the bone had set itself and knitted nicely, and that within three or four months her leg would be as good as it ever was, and that she would then be able to assume and perform the duties of her vocation as well as she did before her leg was broken,* and if the jury further believe from the evidence that plaintiff upon the faith of such statement by the physician (if you find he made such statement), accepted from defendant the sum of two hundred and fifty dollars ($250) in compensation for her injuries, and executed the release in question, and if the jury further believe from the evidence that such statement thus made to plaintiff by said physician *was untrue, and that in point of fact her condition was such that she never recovered the use of her leg, but, on the contrary, was permanently disabled, and that said physician knew, or should have known that his said statement (if he made such statement) to plaintiff was untrue, and knew, or should have known, that plaintiff's disability, by reason of the fracture of her thigh bone,*

*was not temporary but permanent, and knew, or had reason to believe, that plaintiff would rely upon such statement in making a settlement with the defendant,* then the court instructs the jury that said release is no bar to this action."

This is the only instruction attacked by counsel for appellant. We hold that the whole instruction is misleading. It is especially erroneous in incorporating into it the underscored words "after making an examination of her person assured plaintiff that no bones were broken but that later on said physician, after making another examination of her person." These words, this particular clause, could not fail to have an injurious effect and are improperly incorporated in this instruction. Their tendency was to create the impression that a question of malpractice on the part of the surgeon was before the jury, or that his opinion as to the injury when he first saw plaintiff was wrong. That is a matter in no manner whatever pertinent or proper to the consideration of this case. This is not a case of alleged malpractice. Nor is the expression of a mere opinion a fraudulent representation.

The learned counsel for the respondent, in a supplemental brief, makes the point that the action of the trial court in giving instructions at the instance of plaintiff, respondent here, is not open to review, as it does not appear that this second instruction, and for that matter none of the instructions given at the instance of the respondent were objected to prior to their being given; that all that appears in the abstract is that appellant, defendant below, excepted to the giving of the instructions after they had been given. In support of this contention that counsel refers us to the decision of this court in Stevens v. Knights of Modern Maccabees, 153 Mo. App. 196, 132 S. W. 757. It is true that in the Stevens Case, as well as in that of Monroe v. United Railways Company, 154 Mo. App. 39, 133 S. W. 645, and in several other cases lately determined by

us, we so held. Our decisions on this point, in all of these cases, were bottomed on the decision of the Supreme Court of our state in Sheets v. Ins. Co., 226 Mo. 613, 126 S. W. 413. In that case, as we pointed out, it was distinctly held that in order to have the benefit of exceptions to the giving of instructions, there must first have been objection. That we did not misapprehend the holding of our Supreme Court in the Sheets case is evident by the decision of that court in the case of Harding v. Missouri Pacific Railway Co., 232 Mo. 444, 134 S. W. 641. In this Harding case, our Supreme Court, in banc, overrules the Sheets case on this point, holding that in the Sheets case the point was improperly decided. As our sole authority for holding that objection as well as exception was necessary to be shown to the giving of instructions, both by the bill of exceptions and by the abstract, was the decision in the Sheets case, we were bound to follow it as the last and a controlling decision by our Supreme Court on the matter. As the Supreme Court in the Harding case has now distinctly overruled its former decision in the Sheets case, we follow it as the last controlling decision of the Supreme Court on this question. Hence we have examined instruction No. 2, given at the instance of plaintiff, finding that exception had been duly saved to it by defendant, when it was given.

We have referred to the cases which should guide the court in giving instructions, if the case is retried, and will not attempt to set out with particularity the instructions to be given. Furthermore on retrial the facts in evidence may not be as here.

In view of a retrial we also hold that the court should not have inserted the word "merely" in the 8th instruction asked by defendant. The insertion of that word tended to narrow the issue; it was correct as asked.

We make no comment on the action of the court in adding a paragraph to the 9th instruction asked by de-

fendant, further than to say that that will hardly appear on a retrial, if the instructions follow the line here indicated as applicable.

We hold, as before said, that the 10th instruction is erroneous.

Further than this we express no opinion on the instructions given or refused.

Counsel in his motion for rehearing complains that we have noticed and ruled on points not made by appellant, both as to instructions and evidence. We have, always reserving the right to do so, when remanding a cause for a new trial. Neglect of counsel to call our attention to error, is no reason why we should fail, of our own motion, to notice error, when if unnoticed it may, on a new trial, be repeated and counsel then noticing it, compel another reversal.

The motion requiring plaintiff to elect upon which of her causes of attack upon the release she would go to the jury should have been sustained. If the release was entered into as the result of a mutual mistake, that is one thing: if it was the result of fraudulent representations and procured wrongfully, that is quite another. It cannot be both. Plaintiff must stand on one or the other.

The motion for a rehearing is overruled; the opinion heretofore filed is withdrawn and the above substituted; and the judgment of this court, heretofore entered, reversing the judgment of the circuit court and remanding the cause will stand as heretofore entered. *Nortoni* and *Caulfield, JJ.,* concur.