# CASES DETERMINED

## ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

## OCTOBER TERM, 1916.

---

## L. H. WESSEL, Respondent v. WILLIAM WALTKE & COMPANY, Appellant.

### St. Louis Court of Appeals, December 30, 1916.

1. **RELEASES: Rescission: Statute.** Although section 1812, R. S. 1909, providing that when a release is pleaded in bar, the reply may allege facts showing fraud, etc., in its procurement, has changed the prior rule that a release could be set aside only in equity, nevertheless it was not intended to thereby change the rules governing the rescission of contracts of settlement, for fraud.

2. ——: ——: **Necessity of Tender: Pleading.** Where a release, pleaded as a defense in an action at law for personal injuries, is attacked by the reply for mistake and false representations, pursuant to Sec. 1812, R. S. 1909, plaintiff is bound to aver in the reply, and to prove, a tender, before suit brought, of the amount received and interest, or, in lieu thereof, to plead and prove facts showing that the amount would not have been accepted if tendered, and, therefore, that the tender would have been a useless act.

3. ——: ——: ——: ——: **Waiver of Tender.** In an action for personal injuries, where plaintiff sought to avoid a release pleaded in the answer, the fact that defendant insisted on the conclusiveness of the settlement and release was not, of itself, evidence upon which to base a claim that a tender of the consideration, before suit was brought, would have been refused and, therefore, that it was unnecessary to make the tender.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillan,* Judge.

REVERSED.

*Percy Werner* and *Leigh C. Turner* for appellant.

(1) The reply does not state facts sufficient to constitute an avoidance of, or defense to, the covenant not to sue which is set up in the answer, and the trial court erred in refusing to sustain objection to the introduction of any evidence in the case and in refusing to direct a verdict for the defendant. Mallinckrodt Chemical Works v. Nemnich, 169 Mo. 388. (2) The failure of the plaintiff to disaffirm or repudiate the covenant not to sue, and to tender the amount received thereunder, prior to the institution of the suit, bars recovery therein. Reid v. St. Louis & S. F. R. Co., 187 S. W. 15; Retzer v. Dold Packing Co., 58 App. 264; Jarrett v. Morton, 44 Mo. 275; Estes v. Reynolds, 75 Mo. 163; Girard v. St. Louis Car Wheel Co., 123 Mo. 358; Och v. Railroad, 130 Mo. 27; Putnam v. Boyer, 173 Mo. 398; Althoff v. Transit Co., 204 Mo. 166, 171; Morgan County Coal Co. v. Halderman, 254 Mo. 596, 650; Carroll v. United Ry's Co., 157 Mo. App. 247; Whitewell v. Aurora, 139 Mo. App. 597; Lomax v. Electric R. Co., 119 Mo. App. 192; State ex rel v. Stuart, 111 Mo. App. 478, 493; Hancock v. Blackwell, 139 Mo. 440, 453. (3) There was no allegation or evidence of any fraudulent misrepresentation of facts which would warrant any court in setting aside, or allowing a jury to override, the covenant not to sue presented as a defense to this action. The mere expression of an opinion is no ground for setting aside any instrument, whether the opinion is correct or not. Magnuson v. Casualty Co., 125 Mo. App. 206; Carroll v. United R'ys Co., 157 Mo. App. 249. When the instrument admittedly contains what plaintiff understood substantially he was asked to agree to, it is immaterial that he failed to read it or have it read to him, or that he did not "fully understand" its contents. Reid v. St. Louis & S. F. R. Co., supra. (4) On plaintiff's own admissions and the uncontradicted facts in evidence, plaintiff affirmed his contract not to sue and cannot now be heard to repudiate it. (5) The release or covenant not to sue was procured by an officer of the court, to-wit, a reputable member of the bar of the city of St. Louis

and acting as such. There is no evidence here which would warrant a court in submitting to a jury whether in his attempt to "purchase peace" for the defendant, he was guilty of fraud.

*Fish & Fish* and *Crigler & Frank* for respondents.

(1) When a release or purchase of peace has been obtained by guile, deceit, force or fraud, the tender of the sum obtained thereby is not required if it appears, either by the pleading or by the proof, that it would be useless or not accepted. Carroll v. United Railways Co., 157 Mo. App. 293-294; Girard v. St. Louis Car Co., 46 Mo. App. 79; Girard v. St. Louis Car Co., 123 Mo. 358; Reid v. St. L. & S. F. R. R. (Sup. Ct.), 187 S. W. 17; Deichman v. Deichman. 49 Mo. 107; Tenant v. Ins. Co., 133 Mo. App. 356-357; Westlake v. St. Louis, 77 Mo. 47; Walker v. Cooper, 97 Mo. App. 441; Woods v. Wickstrom (1913), 67 Ore. 581, 135 Pac. 192; Malkmus v. Cement Co., 150 Mo. 456; Putnam v. Boyer, 173 Mo. App. 400; 2 Black on Rescission and Cancellation (1916 Ed.), sec. 396. (2) One's acts and conduct may show fraud as well as misrepresentation, taking into account the unequal position of the parties. Stonemetz v. Head, 248 Mo. 243; Porter v. United Railways Co., 165 Mo. App. 619; Kendrick v. Ryus, 225 Mo. 150; Howard v. Scott, 225 Mo. 712; Judd v. Walker, 215 Mo. 312; Lanson v. Stock Exchange, 200 Mass. 367, 86 N. E. 940; Connor v. Chemical Co. (N. J.), 17 Atlantic 975; Union Pacific Ry. Co. v. Whitney, 198 Fed. 784, 117 C. C. A. 392; Logan v. United Ry. Co., 166 Mo. App. 490; Lusted v. C. & N. W. Ry. Co., 71 Wis. 391, 36 N. W. 857; C. R. & P. Ry. Co. v. Lewis, 109 Ill. 120; Woods v. Wickstrom, 67 Ore. 581, 135 Pac. 192; 2 Black on Rescission and Cancellation, (1916 Ed.), secs. 382-386-388; Wingfield v. Railroad, 257 Mo. 347; Koffman v. Railroad, 95 Mo. App. 459. (3) Whether or not the release was fairly obtained, is for the jury, and its finding is not open to review. Logan v. United Rys. Co., 166 Mo. App. 490. Where the appellant is not entitled to judgment, in any event, the case will not be reversed for error occurring

during the trial, the judgment being for the right party, regardless of the error, the material rights of the appellant not being affected.  Putnam v. Boyer, 173 Mo. App. 401; Carroll v. United Rys. Co., 157 Mo. App. 294; Cross v. Gould, 131 Mo. App. 593; Logan v. Field, 192 Mo. 70; Peterson v. The Transit Co., 199 Mo. 331; Revised Statutes of Mo., 1909, sec. 2082.

THOMPSON, J.—This was an action for personal injuries.  Plaintiff secured a verdict and judgment in the lower court, defendant filed motion for new trial, which was overruled, and it appeals to this court.

On the 24th day of February, 1913, plaintiff was in the employ of defendant company and while ascending a stairway on that day was injured by being struck on the head by the falling of a trap door which rested on hinges and was suspended over the stairway which ran from the basement to the first floor of the establishment in which he was employed.  He was knocked to the floor by the door, rendered unconscious for some time, was removed to his boarding house a few blocks away and was laid up about five weeks.  At the end of March, 1913, he returned to his former employment and continued to work there continually until the latter part of July or the first part of August, at which time he left the employment of the defendant after some difficulty with the defendant's superintendent, and thereafter, upon requesting a recommendation from defendant's superintendent, it was refused, and this suit was filed on the 8th day of September, 1913.

The evidence tended to show that during the summer of 1912 the defendant's building in which a soap factory was conducted was destroyed by fire and was rebuilt during the fall, and was not entirely completed in all its details on February 24, 1913, the date of this accident.  The evidence showed that the defendant had contracted with a firm by the name of Mesker Brothers to construct and install an iron safety and trap door over the stairway in question, and that firm did construct the door and install it in position by means of

hinges attached to the floor and a rope and weight with which it was raised and lowered over the trap door through which one ascended and descended in passing from one floor to another. At the time of the accident this door fell as plaintiff was ascending the stairs because of the fact that the rope which held it suspended over the staircase broke. This rope was furnished by Mesker Brothers and the evidence tended to show that at the time the door fell Mesker Brothers had not entirely completed its work for the installation of said trap door, and that the work had not been accepted or paid for by defendant company at the time of the accident. Plaintiff was paid his wages during the time he was unable to work, and his doctor bill was also paid.

The petition claims damages from the defendant for the injuries sustained by the falling of the door upon the plaintiff's head. The defendant's answer consisted, first of a general denial of liability, and second it sets forth a covenant not to sue, signed and acknowledged by the plaintiff, wherein for a consideration of $15 the plaintiff agreed not to bring suit against this defendant. This covenant not to sue was signed on the 28th day of February, 1913, under circumstances which will be detailed hereinafter. The plaintiff's reply to the answer was as follows:

"Comes now the plaintiff in the above entitled cause, and for his reply to defendant's answer states that within a few days after he was injured, as set out in his petition, and while he was confined to his room on account of the said injuries, and while he was in no condition of body and mind to make any contract or to realize what he was doing, and while he was suffering great physical pain and mental anguish, he was visited by a man who said he was the attorney representing Wm. Waltke & Company, the present defendant. Plaintiff further states that this man told him that he had no cause of action against Wm. Waltke & Company, but that plaintiff did have a good cause of action against the company that constructed the said trap-door which caused the injury, and that as plaintiff had no cause of

action against Wm. Waltke & Company, this man told the plaintiff that he would give him some money for medicine and other expenses until he could get well and that then the plaintiff could sue the aforesaid construction company for damages for the injuries received by him.

"Plaintiff states that he did not know this man and had never seen him before, and did not realize what he was doing, and that this man handed him fifteen dollars and got him to sign some paper, but did not read the same to him, nor was plaintiff permitted to read the same if he had been able to do so, nor did he leave plaintiff a copy of said paper.

"Plaintiff further states that the paper which he signed may be the one that the defendant mentions and sets up in its answer, but of this plaintiff is not fully advised for the reason that no copy of said paper was left with him, and he has not seen the said paper, it having not been filed with the said answer in this cause.

"Plaintiff further states that he signed the said paper relying on the statements of the aforesaid attorney, as far as he was able to realize its meaning, and believing that the said statements were true, as represented by the said attorney, but that the said statements made by the said attorney were false and fraudulent, and were known to be such by the said attorney at the time that he made them, and that they were made by the said attorney when this plaintiff was in no condition of body and mind to contract in regard to his aforesaid injuries, and that this fact was well known to this attorney, and that his said signature was obtained to the said instrument by false and fraudulent statements and representations, made by an attorney skilled in his profession, and who knew at the time that he was taking advantage of this plaintiff, whom he knew to be racked by suffering and pain and to be in no condition to make a contract at that time relative to his injuries. Plaintiff further states that the alleged covenant not to sue, now supposed to be set forth in the defendant's answer, was wholly without any consideration; was obtain-

ed by false and fraudulent statements and representa-
tions made by the attorney for defendants as above set
forth; and that said instrument was executed without
any consideration and is therefore absolutely null and
void.

"Plaintiff further states that he stands ready now
and has always been willing to refund to the said de-
fendants the sum of fifteen dollars, which it is alleged
was given to him, and he herein agrees that .the same
may be deducted from any judgment or finding in his
favor, if any.

"WHEREFORE, plaintiff prays that the said alleg-
ed covenant not to sue, set forth in defendant's answer,
being without consideration, may be held for naught,
and set aside, and that all of defendant's answer ex-
cept paragraph one thereof, be set aside and constitute
no defense, and that he may have judgment as prayed
for in his petition."

It appears from the evidence that on the 28th day
of February, 1913, a young lawyer, representing the de-
fendant company, went to the boarding place of plain-
tiff, together with the doctor who was treating the plain-
tiff. The doctor lived in the neighborhood, had a good
reputation and was present at the time the covenant was
executed. With reference thereto, the plaintiff testified
that his signature was attached to it, that he could read
and write and remembered that the doctor and young
lawyer were present when he signed it, that the young
lawyer was speaking about his having a claim against
Mesker Brothers and that after he got out he consulted
Mr. A. R. Taylor about his claim against Mesker Broth-
ers; that the young lawyer had recommended Mr. A.
R. Taylor; that at the time he signed the paper he had
bad spells and did not know where he was at times; was
unbalanced and a sick man and that his boarding-house
keeper kept cold towels on his head; that when the
paper was signed, as much as he recollected about it, he
thought the $15 was given to him as a little money with
which to buy things, that he signed the paper and did not
read it and it was not read to him, and that he really

did not know what it was for as he was in such pain and misery, that his landlady was not there at the time, that he gave her the $15, and he found it on the bed the next morning and didn't know where it came from, and on cross-examination he said, as far as he could recollect, the young lawyer stated that he should accept the $15 and that he could not bring suit against the defendant company, that he could help him and would get him a lawyer who would bring suit for him against the people who were putting up that work, and then he signed the paper, and that is all he stated according to his best recollection, and that the doctor was there at the time.

The young lawyer testified that he was a graduate of the University of Missouri and had been practising law for three years and a representative of an insurance company, and was acting for the defendant in negotiating with the plaintiff, and that before seeing the plaintiff he communicated with the plaintiff's doctor and ascertained from him that the plaintiff was perfectly normal mentally and could be seen on business, and that he went and took the doctor with him to see the plaintiff. That the plaintiff said he was all right and was getting along pretty well. That he thereupon informed the plaintiff that he had made investigation of the facts connected with the accident, and that he had come to the conclusion that the defendant company was not responsible to plaintiff for the injuries, but that the independent contractor, Mesker Brothers, who were installing the door, were responsible to the plaintiff, but that he wanted to buy defendant's peace and was willing to pay him $15 for a covenant not to sue defendant and would otherwise help him out and the plaintiff said that was satisfactory to him, as he did not want to sue the defendant anyhow, as it had always treated him properly, that he then read carefully over to the plaintiff the covenant not to sue, and plaintiff said he was perfectly willing to sign it and that he had plaintiff's doctor, who was present at the time, witness the instrument. The testimony of the young attorney was full and frank, and to the effect that the plaintiff knew all about what he was doing, and

he signed the instrument after a complete explanation of what it contained, and that at the time he was normal and perfectly able to understand the agreement he was making.

The doctor testified that he was present at the time the covenant not to sue was signed, that he saw the plaintiff sign it, and that he was entirely rational at the time and that the paper was read and explained to him, that he does not know whether the plaintiff read the paper or not, but he does know that the young attorney read it to him and plaintiff had the opportunity to read it himself, and that the paper was acknowledged in his presence.

It appears that in the latter part of March the plaintiff resumed work at defendant's plant. It also appears that he employed Mr. Fish as his attorney, and that he presented a claim against the independent contractor, Mesker Brothers, and for some time carried on negotiations with representatives of Mesker Brothers in an attempt to settle his claim against Mesker Brothers; that propositions were made by the plaintiff to Mesker Brothers and by Mesker Brothers to the plaintiff, but for some reason the parties were unable to agree. These negotiations were carried on for some considerable time. It further appears in the evidence that after the covenant not to sue was signed by the plaintiff, he told the young lawyer, referred to above, that he was confident that he had a good case against Mesker Brothers and was going after them, and asked him to refer him to a lawyer. The attorney for Mesker Brothers further testified that in the month of May or June the plaintiff informed him that he had made a settlement with the defendant company for $15 and that he had made the settlement because he did not want to sue the defendant and further testified:

"He said he had released them because he could sue Mesker Brothers and I said Mesker Brothers were willing to pay any reasonable amount in settlement of the claim against them. Mr. Fish had made a very reasonable proposition."

The evidence further showed that after the plain-tiff went back to work he submitted to a medical exami-nation at the hands of a doctor representing Mesker Brothers and he told one F. D. Bryan, a fellow work-man, that he had "fixed up" the matter of his claim against the defendant. He further told the credit man-ager of the defendant company that he had signed a paper or contract with the defendant company releasing them from liability. He told his superintendent that he had released the defendant company by a contract, and to practically all of these people he made the statement that he was pressing his claim against the independent contractor, Mesker Brothers.

At the close of the plaintiff's case and again at the close of the whole case, the defendant asked for an in-struction directing the jury to return a verdict in favor of the defendant under the pleadings and evidence, which the court refused to give.

The appellant contends that the reply is insufficient, and that the verdict should have been in favor of the defendant under the pleadings and evidence in this case, because of the fact that the reply and evidence do not show that before the suit was instituted there was a tender of the $15 and interest paid by the defendant to plaintiff as a consideration for the covenant not to sue. At the outset of the case plaintiff tendered to the de-fendant in the presence of the jury the $15 but without the interest. This tender was objected to by the defend-ant, and at the same time the defendant strenuously ob-jected to the introduction of any evidence in the case on the ground that no tender had been made before the suit was instituted, and asked for judgment because the reply was insufficient. The objection was overruled, and defendant refused in open court to accept the tender for the reasons stated in the objection. We are, therefore, concerned with the point in this case as to whether or not it was necessary for the plaintiff to tender the $15 and the interest before instituting this suit.

In section 1812, Revised Statutes 1909, it is provided that whenever a release, composition, settlement or other

discharge of the cause of action sued on shall be set up or pleaded in the answer in bar to plaintiff's cause of action sued on, it shall be permissible in the reply to allege any facts showing or tending to show that said release, composition, settlement or other discharge was fraudulently or wrongfully procured from the plaintiff, and that the issues thus raised shall be submitted to the jury with all other issues in the case. Prior to the enactment of this section, it was held that the release must be set aside in equity, but the statute has changed this, making it lawful to attack a release or discharge by reply in an action at law. [Carroll v. United Railways Company, 157 Mo. App. 247, 1. c. 289, 137 S. W. 303; Althoff v. St. Louis Transit Company, 204 Mo. 166, 102 S. W. 642; State ex rel. v. Stuart, 111 Mo. App. 478, 86 S. W. 471.] But it was not meant by the statute to change the rules governing the rescission of contracts of settlement upon the ground of fraud, as was clearly pointed out in the case of Althoff v. St. Louis Transit Company, 204 Mo. 166, 1. c. 171, 102 S. W. 642, where it is said:

"It was not the purpose of the Legislature, by the enactment of that section, to change the law of accord and satisfaction, and the rules governing the rescission of contracts of settlement upon the grounds of fraud, but the clear intention was to avoid a multiplicity of suits, by authorizing the fraud issue to be tried by the jury at the same time and in the same case involving the original cause of action."

One of the earliest cases upon the subject is that of Jarrett v. Morton, 44 Mo. 275, Where BLISS, J., speaking for the court said:

"Before commencing proceedings on his original claim, the plaintiff should have tendered back the note received of defendant—should have repudiated the settlement—and then he would have been at liberty to impeach it if set up against his claim. But, as it is, he hangs on to it, and is not at liberty to deny its validity."

The old case of Estes v. Reynolds, 75 Mo. 563, 1. c. 565, was a case to set aside or disaffirm a contract for fraud, and the court in that case said:

"A party cannot affirm a contract in part, and repudiate it in part. He cannot accept its benefits on the one hand, while he shirks its disadvantages on the other. He cannot play fast and loose in the matter. Nor is he permitted to select his own time, consult his own convenience and watch the rise and fall of the market, before exercising the right of rescission. If he elects to disaffirm the contract in consequence of deception practiced upon him, such election in order to avail him must have the chief and essential element of promptitude, and he must put the other party in the same situation as he was before the contract was made. All the authorities speak this language. [Jarrett v. Morton, 44 Mo. 275; Hart v. Handlin, 43 Mo. 171, and cases cited.]"

In the case of Retzer v. Dold Packing Company, 58 Mo. App. 264, the Kansas City Court of Appeals said:

"If the contract was voidable for any cause the plaintiff had the right to elect to affirm or disaffirm it. If he affirmed and the defendant failed to perform it in any particular his remedy would be on the agreement, but if he chose to disaffirm it and prosecute his original cause of action he must first make restitution of the consideration received under the repudiated contract."

In the case of Carroll v. United Railways Company, 157 Mo. App. 247, 137 S. W. 303, this court, reviewing all of the authorities in this State and many of the authorities of foreign jurisdiction upon this subject, announced the rule in the following language, through REYNOLDS, P. J.:

"Our own view is, that the weight of authorities in our State is to the effect that at law, averment and proof of tender is required prior to the accrual of a right of action, unless excused by its uselessness or impossibility."

The latest decision upon this subject in this State is that of Reid v. St. Louis & San Francisco Railroad Company, 187 S. W. 15, where BLAIR J., speaking for the court said:

"In the circumstances of this case it was incumbent upon respondent before he could attack the release for

fraud in its procurement, to tender to appellant the amount received for its execution.''

It follows, therefore, from the above authorities, that it was necessary for the plaintiff in this case to have tendered back to the defendant the amount he had received as a consideration for the covenant not to sue, and it seems also that the interest ought to have been tendered prior to the institution of this suit.

The learned counsel for the respondent argue that there are exceptions on this general principle that the consideration for the release with the interest must be tendered back to the defendant before institution of the suit, and they argue that it is unnecessary to make a tender where it would be useless or not accepted, and then argue that it was evident from the conduct of the defendant that a tender in this case would have been useless and would not have been accepted, as being shown by the fact that the defendant relied upon the release at the trial and insisted that it was a valid and binding release, and as supporting this contention they cite the case of Girard v. St. Louis Car Wheel Company, 123 Mo. 358, 27 S. W. 648. In that case the majority of the court, speaking through BARCLAY, J., (BLACK, BRACE and MAC FARLANE concurring in the result) held that a failure to make a tender before bringing suit is not fatal, if the defendant gets the benefit of a tender by being allowed the amount in the verdict. MACFARLANE, BLACK and BRACE, JJ., concurred in holding that if no objection is made to the reply because it fails to plead a tender, and the defendant insists throughout the trial on the validity of the release, the appellate court will not set aside a verdict in which defendant has received credit for the amount of the consideration given for the release. In this case BURGESS, GANTT and SHERWOOD, JJ., insisted that a tender must be made before the suit is brought.

Now in the present case the counsel for the defendant raised the insufficiency of the reply at the outset of the case by objecting to the introduction of any testimony, including the tender, so that this case is not within the decision of MACFARLANE, J., in the Girard case.

This same contention was made in the Carroll case, supra, to the effect that it would have been useless to make a tender because of the fact that the defendant relied upon the argreement at the trial, which shows that the defendant would not have accepted the tender. This was directly answered by REYNOLDS, P. J., in the following language:

"It does not seem logical to assume that because the defendant, defending against an action, after that action had been instituted and after being brought into court by process, would have declined tender of restitution if made before. Men often take positions after being brought into court that they would not have taken before that, if given the opportunity."

In this case there is no direct evidence nor any evidence by which even the slightest inference could be drawn that a tender of the consideration with interest would not have been received. After the covenant not to sue was signed there were no negotiations whatever between the plaintiff and the defendant for payment of plaintiff's claim for his injuries, and so far as the evidence shows there is not the slightest intimation that the defendant expressly or impliedly took the position that it stood upon the agreement and would under no consideration cancel it upon the tender of the consideration.

Plaintiff cites some cases of foreign jurisdictions wherein it has been held that a tender is not necessary, but they are not in accord with the rule of decisions in this State. Our attention is called by the learned counsel for the plaintiff to Black on Rescission and Cancellation, section 396, where it is laid down that it is not necessary to tender back the consideration where the fraud inheres in the execution of a release of a cause of action and is of such a character as to prevent the formation of a valid contract in the first instance (as where the claimant is fraudulently induced to believe that he is signing an instrument of an entirely different caliber and has no intention of executing a release). A plaintiff thus imposed upon, says the author, need not pay or tender the consideration received as a prerequi-

site to his right to sue on the cause of action released, since he neither avers a release nor seeks its cancellation, but proceeds on his cause of action as though no contract of compromise had ever been made. But in this case, the plaintiff's own evidence distinctly shows that he knew he was signing an instrument which precluded him from bringing a suit against the defendant, and further evidence of numerous other persons distinctly discloses that the plaintiff knew the nature of the instrument he had signed and told them of it.

Again, we take it that where timely objection is made by defendant, as was done here, in order for a plaintiff to bring himself within the exceptions to the rule of tender, he must affirmatively plead or set up the facts which bring him within the exception, that is, he must set forth the fact that a tender was not made because useless, or some other fact showing an excuse for failure of tender, and must offer evidence proving or tending to prove those facts.

It follows from what has been said above that the peremptory instruction asked for by the defendant should have been given and the judgment is, therefore, reversed. *Reynolds, P. J.,* and *Allen, J.,* concur.