SYME-EAGLE & COMPANY, Respondent, v. JOPLIN GROCER COMPANY, Appellant.

Springfield Court of Appeals, March 25, 1921.

1. **SALES: Contract Held not Assignment of Another Contract so as to Relieve Seller of Liability on Warranty.** Where buyer of a quantity of canned corn resold it subject to his contract of purchase for a different price and on different terms of payment than provided in his contract, he did not thereby assign his contract to his buyer so as to be relieved of liability for breach of warranty that the goods were fit for human consumption; the reference to his contract merely meaning that the conditions of delivery in that contract were to be incorporated in the resale contract.

2. **CUSTOMS AND USAGES: Custom cannot Alter General Rule of Law.** Evidence of custom is not admissible to oppose or alter a general principle or rule so as to make the rights and liabilities of parties other than they are at law, nor can it be invoked to justify an unreasonable course.

3. **SALES: Seller's Direction for Judgment of Rejected Goods Waives Objections to Tender and Receipt.** In an action against a dealer in canned goods for breach of warranty of quality, the dealer's

(357)

objections as to the necessity of tender of return of goods and receipt of them are unavailing, where it appeared the dealer directed the buyer to return the goods to the manufacturer, which the buyer did.

4. ————: Buyer cannot Accept Portion of Single Shipment and Rescind as to Rest for Breach of Warranty. Where a contract for the sale of canned corn was indivisible, and the corn was shipped in one lot and not in installments, the buyer cannot accept and retain a portion of the corn and rescind the contract as to the balance because of breach of warranty of fitness for food, even though the defect in the corn could not have been ascertained until the cans were opened, after which they would be unmerchantable unless recanned at an expense greater than the original cost.

FARINGTON J., dissenting.

Appeal from the Jasper Circuit Court.— *Hon. Joseph D. Perkins,* Judge.

REVERSED.

*H. S. Miller,* for Appellant.

(1) The following cases hold that a rescission must be *in toto,* and that a party cannot affirm a contract in part and repudiate it in part.    Hunter v. Slenbach, 17 Ga. 243; Bell v. Keep, 39 Kan. 105, 17 Pac. 785; Grimes v. Sanders, 93 U. S. 51; Brill v. Rock, 23 S. W. 511; Barrie v. Earl, 143 Mass. 1, 8 N. E. 639; Merrill v. Wilson, 66 Mich. 232, 33 N. W. 716; Estes v. Reynolds, 75 Mo. 563; Burnham v. Spooner, 10 N. H. 532; Butler v. Prentiss, 36 N. Y. Sup. 301. (2) The following cases hold that the filing of suit is an affirmance of the contract and will bar rescission.    Bryan Shoe Company v. Brock, 5 S. W. 1073; Wheeler v. Dunn, 13 Colo. 428, 22 Penn. 827; Stemes v. Pine, 151 Mass. 207, 23 N. E. 1006; Beder v. Raume, 95 Mich. 518, 55 N. W. 366; Goodal v. Steror, 65 Miss. 157, 3 So. 257; Bach v. Turk, 126 N. Y. 533, 36 N. E. 1019; Conroe v. Little, 115 N. Y. 387, 22 N. E. 346. (3) The case of Window Company v. Cornice Company, 181 Mo. App. 325, holds that: "To put the defrauded party to his election, it is not required that

the full features of the given fraud should be known to him. The right to rescind a contract must be exercised as soon as any one of the events which gives rise to the right happens or is known to the persons entitled to it." (4) We quote from the case of Evans v. Western Brass Mfg. Co., 118 Mo. 553, as follows: "The general rule undoubtedly is that parol evidence cannot be admitted to contradict, add to, or vary a written contract and it is the duty of the court to construe the writing. (Citing authorities.) But it is equally well settled that proof of usage is often admitted to interpret the meaning of the language used, for under many circumstances the parties may be supposed to contract with reference to a usage or custom as they are presumed to use words in their ordinary signification. (Citing Greenleaf on Evidence, sec. 292.) 'The courts,' says Starkie, 'have long allowed mercantile instruments to be expounded according to the usage and custom of merchants who have a style and language peculiar to themselves, of which usage and custom are the legitimate interpreters.'" Said same language was quoted in the case of Realty Co. v. Moyneham, 179 Mo. 643. Also see the following authorities: Plant v. Corby, 37 Mo. 314; Cameron v. Real Estate Co., 76 Mo. App. 371; Wilcox v. Baer, 85 Mo. App. 592; Baer v. Glaser, 90 Mo. App. 294; Long Bros. v. Armsby, 43 Mo. App. 263; Haworth v. Grain Co., 174 Mo. 171; Stork v. Metsker, 55 Mo. App. 37; Martin v. Hall, 26 Mo. 386; Southwestern Fruit Co. v. Horand, 44 Mo. 82; Soutier v. Kellerman, 18 Mo. 509; Cole v. Skrinka, 37 Mo. App. 427.

*Geo. J. Graystone* for respondent.

(1) No tender is necessary where the person to whom it would be made has shown that he would not accept it, if made. No offer to return is necessary where the subject of the sale is worthless. Smith v. Means, 170 Mo. App. 158. (2) Where a petition contains one

count for damages based on breach of warranty and another count based upon rescission, the court can correct the error of misjoinder by its instructions. Smith v. Means, supra. (3) By filing answer and going to trial upon the merits, the defendant waived the question of departure. 1 Ency. Pl. & Pr. 573; Mathewson v. Larson-Myers & Co., 217 S. W. 613. (4) A party is not bound absolutely by his first election. Johnson-Brinkman Commission Co. v. Railroad Co., 126 Mo. 344; Brigham v. Judy Inv. Co., 186 S. W. 15; Fitzgerrell v. Trust Co., 187 S. W. 600; Smith v. Becker, 192 Mo. App. 597, 606. (5) By filing its motion to elect with reference to the first amended petition filed by plaintiff containing one count based on breach of contract and another count based on rescission, defendant conceded that at said time plantiff had its choice of two remedies. Fitzgerrell v. Trust Co., supra. (6.) In case of separable or divisible contracts, the contract may be affirmed as to part and rescided as to part. 2 Black on Rescission and Cancellation, sec. 585, p. 1368. (7) Customs and usages must be construed more strictly than acts of Parliament altering the common law, and any custom which would vary the general and well settled rules of law would be unreasonable and void. Martin v. Mill Co., 49 Mo. App. 23, 31. Evidence of custom is never admissible to suppress or alter a general principle or rule, so as to make the rights and liabilities of parties other than they are at law. S. W. Freight & Cotton Press Co. v. Standard, 44 Mo. 71, 83. Testimony of witnesses declaring what their individual opinions are and the obligations they should have deemed rested upon them had they been placed in the defendant's situation should be excluded. S. W. Freight & Cotton Press Co. v. Standard, 44 Mo. 71, 82. A custom, however well established, can never be permitted to prevail so as to make the rights and liabilities of parties other than they are at law. What constitutes a delivery is to be determined by the law regardless of the understanding of parties as to a custom. Ober et al. v. Carson Estate, 62 Mo. 209, 214.

See also: State ex rel. Public Service Com., 269 Mo. 63, 74-75; Bank v. Bank, 151 Mo. 320, 331-332, 74 Amer. St. R. 527. Common use among motor car manufacturers of the terms "agent" and "commission" in a sense different from their legal and generally understood meaning is a distortion which the law will not recognize. Renick v. Brooke, 190 S. W. 641, 642. (8) A party entitled to rescission is not limited to recovery of the amount paid to the seller, but if expenses are incurred as a natural consequence, the rescinding party is entitled to be made whole, which means that he may recover not only the purchase price paid but the incidental expense. 2 Black on Rescission and Cancellation, sec. 695, p. 1570; Holland v. Western Bank & Trust Co., 56 Tex. Civ. App. 324, 118 S. W. 218, 119 S. W. 694.

BRADLEY, J.—This cause is in equity to rescind a contract and to recover the amount paid thereunder for a shipment of canned corn. Plaintiff prevailed and defendant appealed.

Plaintiff, a wholesale grocer of Chicago, alleges that on July 29, 1916, defendant, a wholesale grocer of Joplin, Missouri, entered into a contract with the Forest City Canning Company of Forest City, Iowa, whereby the Canning company sold and defendant purchased 2000 cases of canned corn, each case containing 2 dozen cans. The price was 62½ cents per dozen cans, f. o. b. factory at Forest City. This contract is set out in plaintiff's petition, and is as follows:

"Future Delivery Contract.

Forest City, Iowa, July 29, 1916.

The Forest City Canning Company of Forest City, Iowa, hereby sells, and the Joplin Grocer Company of Joplin, Mo., hereby purchases 2000 cases (of 2 doz. each) No. 2 cans Standard Corn at 62½ cent per dozen f. o. b. factory.

Terms—Sixty days acceptance, or less 1½ per cent if paid within ten days from date of invoice.

Shipment—As soon as goods can be made ready during or after the packing season of 1916,

Delivery—In case of fire, strikes, short crops or other conditions beyond the control of seller preventing the packing of sufficient goods to fill all orders in full, the *pro rata* distribution of all goods packed with all orders entered, shall be accepted by the buyer in full settlement of this contract, without claim for damages for short delivery.

Should the buyer not make demand for delivery by November 1, 1916, seller may at its option and without liability cancel this contract by giving five days written notice mailed to buyer.

Guarantee—All goods packed by The Forest City Canning Company are guaranteed to comply with the national Pure Food Law (June 30, 1906) and not to be misbranded when sold under its own labels. All responsibility for misbranding is assumed by the buyer if labels furnished by him are used. Swells and leaks guaranteed to July 1, 1917.

Routing—Seller reserves the initial routing of this shipment, but buyer may name the terminal or delivery railroad on which shipment shall be made.

Remarks—In case of short pack we consent to the cutting down of this order, *pro rata* with all orders taken of twenty-five per cent without liability for claim for damages and to accept cash payment of 10 cents per case for cutting down additional 25%."

Plaintiff further alleges that on September 6, 1916, it entered into a contract with defendant by which defendant sold and plaintiff purchased at 75 cents per dozen the 2000 cases of corn that defendant had purchased from the canning company. This last mentioned contract is set out in full, and is as follows:

"Kansas City, Mo., Sept. 6, 1916.

Seller

Joplin Grocer Co.,
    Joplin, Mo.

Terms 1% 10 days.

Syme-Eagle & Co.,
    Chicago, Ill.

We confirm purchase for your account, as brokers, from above named seller of following goods:

Shipment when packed.

2000 c/s #2 Std. Iowa Corn ..................... 75¢

　　F. O. B. Iowa factory—Pack of 1916.

　　Subject Joplin Gro. Co.'s contract with Forest City Canning Co."

　　Plaintiff alleges that the reference, in the contract between it and defendant, "Subject Joplin Gro. Co.'s Contract," etc., had the effect of incorporating into the contract between plaintiff and defendant all consistent provisions of the canning company contract, and especially that the seller guaranteed that the corn would meet the requirements of the pure food law. Plaintiff further alleges that defendant knew the corn was purchased for resale, and that there was an implied warranty that the corn would be reasonably fit for human food and merchantable as such. Plaintiff then alleges that the corn was not fit for human food, was not merchantable, and did not comply with the pure food law, but was filthy, decomposed and putrid, and in a condition commonly known as "flat sour," that this "flat sour" condition could not be ascertained except by opening the cans, and for that reason the whole lot was worthless; that after learning that a substantial portion of the corn was not fit for human food and was not merchantable if offered to return said corn to defendant, and demanded the amount paid therefor.

　　The answer on file when the evidence was taken admitted the contracts were made as alleged, and that the Forest City Canning Company under the contract between plaintiff and defendant, shipped plaintiff certain cases of corn, and that plaintiff had an opportunity to inspect same, and that plaintiff received, accepted and disposed of this corn. Then follows a ʳeneral denial. Further answering defendant avers that the sentence, "Subject Joplin Gro. Co.'s contract with Forest City Canning Company" has a meaning peculiar and special to the canned goods trade, and that said sentence means that plaintiff stepped into defendant's shoes, and thereafter defendant was under no obligation to plaintiff to do more than use its good offices to induce the canning company to adjust any complaint that plaintiff might make,

Suit was filed August 29, 1917. The first petition was for damages for breach of contract. To this petition defendant answered by general denial. The cause was pending on this petition and answer until the April term, 1919 when plaintiff, on April 15th, filed its first amended petition in two counts, the first for damages for breach of contract as in the original, and the second to rescind. On the 24th of April defendant again answered by a general denial. The cause in this situation went over till the September term, 1919. On September 16, 1919, defendant, with leave, withdrew its answer to the first amended petition and filed a motion to require plaintiff to elect upon which count it would proceed, alleging in the motion that the two counts were inconsistent. On October 25th the motion to elect was sustained, and plaintiff elected to stand on the second count. On October 30th plaintiff recast its second count and filed it as a second amended petition. On same day defendant filed answer the substance of which is stated supra, and on this date, October 30, 1919, the evidence was taken. The cause was then passed until the April term, 1920, and on May 19, 1920, was submitted and argued on the evidence theretofore taken. After the argument and on same day defendant filed amended answer which answer contained the same averments as in its answer of October 30th, and in addition a paragraph pleading waiver based on the fact that plaintiff filed in the first instance its petition for damages for breach of contract. Defendant charges in effect that after making its election to sue for damages for breach by first filing its petition for damages that plaintiff waived its right if any it had to thereafter rescind.

Both parties treated this cause as in equity, and we will accept the situation as it is presented. By direction of defendant the canning company shipped as directed by plaintiff. Plaintiff directed the canning company to ship 1500 cases to Reid, Murdoch & Company of Chicago, and 300 cases to the Neosho Wholesale Grocer Company of Neosho, Missouri. There was no complaint about the shipment to the Neosho Wholesale Grocer Company. Reid, Murdoch & Company sold to their customers in different

parts of the country, and a great many cases were reject-ed because not fit for human food. Reid, Murdoch & Company went back on plaintiff for adjustment and plaintiff settled with that company for the rejected corn. The canning company became a bankrupt soon after packing this corn, because it had so much "flat sour" in its output in 1916, according to its superintendent. The corn that was rejected by the customers of Reid, Murdoch & Company, by direction of defendant was shipped back to the canning company. Plaintiff was threatening to ship the rejected corn to defendant at Joplin, and defendant wrote plaintiff to have said corn shipped to the canning company. The corn purchased by Ried, Murdoch & Company was sold by them at different times along in the fall of 1916, however, it was in the late spring or early summer of 1917 before the customers of Reid, Murdoch & Company got their troubles with their seller adjusted. On June 2, 1917, plaintiff advised defendant that practically the entire shipment had been rejected and asked advice as to disposition. After this there was a spirited and lengthy correspondence between plaintiff and defendant. Defendant was also writing the canning Company and a brokerage firm in Kansas City through whom defendant purchased. Defendant got no satisfaction as the canning company was then bankrupt. Plaintiff drew on defendant on June 28, 1917, for $1860.97. The amount of this draft was based on freight, cartage, etc., paid out by plaintiff and on 900 cases of the corn.

Defendant makes several assignments, but these may be grouped into five questions. 1. Does the language, "Subject Joplin Grocer Co.'s contract with Forest City Canning Company" in the contract between plaintiff and defendant amount to an assignment of defendant's contract with the canning company to plaintiff so that plaintiff's cause of action is against the canning company and not defendant, or does this mean that plaintiff was to get from defendant in quanity and quality just what defendant got from the canning company—no more and no less? 2. Could plaintiff rescind in view of the fact that return of the entire shipment was impossible? 3. If plain-

tiff could rescind, did it waive its right to do so by filing its petition for damages for breach of contract and delaying to ask for rescission until it 'filed its amended petition on April 15, 1919?    4.    Was there an implied warranty that the corn was fit for human food and was salable as such?    5.    Is the judgment excessive?

As we view this case it is only necessary to consider but the first two of these assignments.    The construction that defendant puts upon the language, "Subject, Joplin Grocer Co.'s contract" etc. is divided in two parts.    First, defendant contends that this language in effect amounted to an assignment of the canning company contract so that thereafter plaintiff with respect to that contract stood in the shoes of defendant, and would have recourse only against the canning company.    Second, that this language means that what defendant got from the canning company plaintiff would get—no more and no less.    Defendant introduced evidence of persons experienced in trade contracts of the character here tending to show that defendant's construction is the proper one according to custom, and that such is the usual construction, but just which of defendant's construction is the proper one, these trade experts were not fully agreed.    Plaintiff on the other hand introduced evidence of like experienced persons construing the language to mean that whatever delivery, and when, the packer made under its contract would govern as to same matters in the contract between plaintiff and defendant.    Plaintiff's experts claim that their construction was the custom, and defendant's experts made similar claim.    The court below found for plaintiff and therefore did not construe the contract according to defendant's theory, but whether the court based its conclusion upon evidence of custom does not appear.    We think that when the two contracts are considered together they speak for themselves independent of any outside interpretation. The only reasonable construction to place upon this language, "Subject Joplin Grocer Co.'s contract," etc. is that defendant would not be held to delivery if delivery was not made to it.    The two contracts were separate and distinct

and between different contracting parties and are quite dissimilar in other features.

It will be noted that the terms and the price in the two contracts are different. If defendant's contract with plaintiff amounted to a mere assignment of the contract with the canning company then plaintiff would be limited in an action against the canning company to 62½ cents per dozen, or else the canning company would be compelled to pay more than its contract price. The canning company protected itself against liability in the event of failure to deliver from causes which it could not control, and that is all that defendant did by providing that its contract with plaintiff was subject to the canning company contract. Evidence of custom is not admissible to oppose or alter a general principle or rule so as to make the rights and liabilities of parties other than they are at law. [Southwestern Freight & Cotton Press Co. v. Stannard, 44 Mo. 71, l. c. 83; Martin v. Milling Co., 49 Mo. App. 23.] A custom cannot be invoked to justify an unreasonable course. [Bank v. Bank, 151 Mo. 320, 52 S. W. 265.] If a contract like the one between plaintiff and defendant be construed according to defendant's evidence of custom then the most absurd and unreasonable consequences might follow. Parties might be compelled to respond where they had not contracted. No one should be required to answer for another's contract to which he is an absolute stranger both in law and fact. On the other hand no one should be permitted to escape the consequences of his own contract upon such a sophistry of reason as it would require to adopt either of defendant's constructions.

Could plaintiff rescind since it was impossible to return the entire shipment? Plaintiff gives some attention in its brief to the subject of tender. We think that the questions of tender and receipt, so far as concerns the rejected corn, are settled by the fact that defendant directed plaintiff to ship the rejected corn to the canning company and plaintiff did as directed. The second assignment is based on the theory that having disposed of a substantial part of the corn rescission could not be made.

The evidence shows that the defective condition of the corn could not be ascertained without opening the can, and that the expense of recanning the good that might be found would be greater than its value. A great number of cans were examined and found defective. The superintendent of the canning company testified that there was no question about something being wrong with the pack of 1916. The whole shipment to Reid, Murdock & Company was not worthless, and defendant contends that in such case, and where the purchaser retains a part he cannot in any event rescind as to the remainder. In 2 Black on Rescission and Cancellation, section 586, it is said: "A party entering into a contract for the purpose of goods to be delivered in installments, cannot accept pay for, and use the first installment and refuse the second, and rescind the contract, without the consent of the seller, except in cases where there is a breach of warranty or a deficiency in quantity or quality. In such cases the acceptance of a portion or installment of the goods which answer the warranty will not oblige the purchaser to accept the subsequent installments which are deficient or defective. But it has been ruled that a vender of goods to be delivered in installments may on refusal of the vendee to accept certain installments cancel the contract as to them and yet hold it in force as to the other installments."

Concerning the same principle as we take it our Supreme Court in Sigerson v. Harker, 15 Mo. 76, said: "We are aware that there may be sales with warranty when the articles sold are to be delivered, not at once, but continuously, from time to time. In such cases the receiving of a portion of the articles which corresponded with the description, would not compel the vendee to accept others which were deficient in quality, especially in cases where the portion received has been in any way appropriated, or placed in a condition which rendered a return of it inconvenient."

But in this case it was held that the rescission of a contract for the sale of a lot of goods with a warranty must be entire, and that the vendee cannot select such as will answer the warranty and return the remainder. The

shipment out of which the case at bar arose was one single shipment. It did not go in installments, hence the rule laid down in Black on Rescission and Cancellation, and the other authorities cited and relied upon by plaintiff, are not in point. The rule in Missouri is that where the shipment is not in installments, but in one single shipment, the purchaser cannot accept such as meet the warranty or the conditions of the contract and rescind as to the remainder. [Sigerson v. Harker, supra; Taylor v. Short, 107 Mo. 384, 17 S. W. 970; Wessel v. Walker & Co., 196 Mo. App. 593, 190 S. W. 628; Rigler v. Reid, 186 Mo. App. 111, 171 S. W. 952.] There are many other cases to the same effect, but it is not necessary to burden the opinion with citations. We hold, that under the facts here that plaintiff could not rescind, and the court could not decree rescission in a suit for that purpose. It is not necessary to discuss and determine other questions raised. We have disposed of such assignments as are necessary in the case in hand. We will state however that we know of no reason why plaintiff may not pursue his cause for breach of warranty. But that is not the case here. As to there being an implied warranty of the fitness of the corn for human food see note in L. R. A. 1917, F, 472; also St. Louis Brewing Association v. McEnroe, 80 Mo. App. 83.

The judgment below should be reversed and it is so ordered. *Cox, P. J.,* concurs. in a separate opinion. *Farrington, J.,* dissents in a separate opinion.

COX, P. J.—I concur in the foregoing opinion of Judge BRADLEY, but will add the following to what he has said:

In this case, a large number of cases of canned corn were sold by defendant to plaintiff in one transaction Each case contained two dozen cans, and the price was 75 cents per dozen cans. Defendant contends that this is one entire contract, and, if rescinded at all, it must be rescinded *in toto,* while plaintiff contends that it is divisible, and that part of the cases of corn could be retained and the contract rescinded as to the remainder.

Whether or not a contract for the sale of goods is divisible so that a part may be retained by the purchaser and

the contract rescinded as to the remainder does not depend solely on the divisibility of the consideration, but also depends largely on the terms of the contract itself. [Clark v. Baker, 5 Metc. (Mass.) 452.]

In this case the amount to be paid for each case of corn could be readily ascertained, but it cannot be said that each case was separately sold. If this contract is divisible because of the divisibility of the consideration, then it must be divided by the dozen cans, for the price was fixed by the dozen cans, and not by the case, and certainly the purchaser could not break a case and take out one dozen cans and return the other dozen. It has been held that if articles are sold and a separate price fixed on each article, though all sold in one transaction, then a part may be retained and the contract rescinded as to the others. [Young & C. Mfg. Co. v. Wakefield, 121 Mass. 91.] But when a certain quantity of goods, or a certain number of similar articles, are purchased as one transaction, the price being fixed by a measure or by one article, and the measuring or counting is done solely for the purpose of ascertaining the total amount to be paid, then the contract is entire and, ordinarily, if rescinded at all, must be rescinded *in toto*. [Mansfield v. Trigg, 113 Mass. 350; Morse v. Brackett, 98 Mass. 205.]

I think this contract was entire, and, as rescission *in toto* cannot be made, and insolvency not being alleged or shown, and no other reason appearing why a court of equity should interfere, I agree that plaintiff cannot recover in this action.

FARRINGTON, J. (dissenting.) I do not concur in the part of the majority opinion holding that plaintiff cannot recover because it is in the nature of a rescission, and plaintiff did not tender back to defendant all the canned corn it received under the purchase contract. I think the judgment should be affirmed.

It should be kept in mind that this suit is not properly one in equity to rescind an executory contract. The contract in question was fully performed by both parties;

that is, the canned corn sold by one party had been fully delivered, and the other party had paid for it. After the contract was fully performed, it was discovered that the corn was worthless for the purpose for which it was sold by defendant to plaintiff. The corn was ultimately intended for human food, but plaintiff bought it for resale as a wholesale dealer; and, while some cases of the corn were good, yet so much of it was unfit for food, and there was no way of distinguishing the good from the bad except by opening each can, which itself destroyed its value except for immediate consumption, the plaintiff was justified in treating it as worthless. The discovery that the corn was worthless was not made by plaintiff, but by those to whom plaintiff had resold the corn in smaller quantities; consequently this discovery was not made till some time after plaintiff had paid for the corn on the assumption by both parties that it was of the kind and quality mentioned in the contract and suitable for human food. It was then that plaintiff, having had to refund to those to whom it had sold the corn, demanded that defendant refund to it the price it had paid defendant for this worthless corn.

There was no fraud in the sale, and plaintiff is not seeking to rescind a sale contract procured by fraud. Both parties acted in good faith, each believing that the corn was of good quality and suitable for food. Defendant had bought it from the manufacturer on this theory, and sold it to plaintiff on the same theory. All questions of fraud or plaintiff's duty on discovering the fraud are out of the case.

It is conceded by both parties and by the majority opinion that there was an express or implied warranty, or both, in the sale of this corn by each successive seller that this corn was suitable for human food and salable as such. This warranty failed, and defendant stands in the position of having sold and delivered to plaintiff a worthless article of merchandise for which

it has collected the purchase price as for sound merchandise and with an express or implied warranty that it was such.

In such case it seems clear that the purchaser who has paid for the worthless article can recover from the seller the amount of the purchase price paid. Thus it is said in 9 Cyc. 410:

"If the matter innocently misrepresented is a term or condition in the contract, or if the party has warranted it to be true, its falsity does not affect the formation of the contract; but it operates to discharge the other party from his obligation or to give him a right of action *ex contractu* for the damages which he has sustained by the breach."

The petition in this case, which is denominated one for rescission rather than for damages, alleges the terms of the sale contract, and that it was implied and agreed that the corn so sold should be fit for human consumption and salable as such, and further alleges that defendant delivered only 1,500 cases of corn, and that plaintiff paid the defendant therefor the sum of $2,250, the contract price for same. It is further alleged that:—Such corn was in fact, and was later discovered to be, "not reasonably fit for human consumption as food, and was not salable and did not comply with the national Pure Food Law of June 30, 1906, in that all or at least a considerable portion of said corn was filthy, decomposed, and putrid and in a condition commonly known as 'flat sour;' that because of the fact that there was no external evidence of the condition of said corn, its actual condition could not be determined except by opening the cans, and the same could not be handled and sold in the usual manner and in any other practicable manner by reason of said facts, and same was all worthless both to plaintiff and defendant."

The plaintiff prays judgment for the amount paid by plaintiff to defendant for said corn.

The petition, therefore, is clearly one for damages on a rescinded contract rather than in equity for a rescission of an executory contract. The contract had been fully executed, had passed into history, and there was no need of any relief by way of rescission. The allegation of the petition that plaintiff had no adequate remedy at law because the exact amount of bad corn could not be ascertained without destroying same is refuted by the alleged and proven fact that so much of it was bad that it had no value as a vendible commodity, and was worthless to either plaintiff or defendant. The damages prayed for and recovered was exactly what plaintiff was entitled to in any form of action where he had bought and paid for worthless merchandise, to wit, the recovery of the price paid. The petition also alleges that plaintiff, on discovering that the corn in question was not salable or fit for human food and of no value offered to return the corn to defendant, and demanded repayment of the purchase price, but this allegation is mere surplusage, since all the authorities hold that even in suits for rescission, if the property received under the contract is worthless, then no restoration of such property or tender of same is necessary.    9 Cyc. 439.

Where the purchaser under a sale contract receives thereunder goods differing in kind or quality from what he purchased, but the goods received have some value, it is but justice that he should not be compelled to keep and pay for the inferior goods. In such case he has an election to retain the inferior goods and recover, if he has already paid for same, the damages sustained which is usually the difference in value between what he did receive and what he was entitled to receive, or he may return the inferior goods or offer to do so and recover the full price paid. Whether the vendee does the one or the other determines the form of his action, whether it be on the rescinded contract or in affirmance of it for damages. [City Light, Power & Storage Co. v. Mach. Co., 170 App. 231, 156 S. W. 83.] Obviously, however, the vendee is not put to an election as to retaining the property or returning it, unless it has some value (St. Louis Brewing Ass'n

v. McEnore, 80 Mo. App. 429) ; and, since it makes no difference whether he did or did not offer to return the worthless property, there is no necessity for an election of remedies, and there is no essential difference in the two forms of action or the essential facts constituting the same, and the relief is the same, to-wit, a judgment for the full value of the property, whether by way of damages or on a rescission.

It must be remembered that under our system of Code pleading, forms of action are abolished, and all that the pleader need do is to state the facts constituting his cause of action. The pleader here in his second count of his petition, on which he elected to stand, has stated the essential facts entitling him to a judgment for the amount he has paid defendant for the worthless corn, and the fact that he made some useless allegations as to offering to return the worthless property and the failure to prove such allegations are immaterial. If plaintiff did not need to allege or prove that he returned, or offered to return, any of the corn, he cannot be defeated in his action for failure to prove that he returned all of it. Where a sale contract has been fully executed and the property delivered to the vendee is of no value, and he is seeking to recover the purchase money paid and nothing else under an express or implied warranty, and the plaintiff states in his petition and proves by his evidence the facts warranting such relief, then form should yield to substance.

I think, also, that the judgment should be affirmed even if it had been necessary that plaintiff return, or offer to return, the corn received by it under the contract before suing for a recovery of the purchase money paid as damages on a rescinded contract. The plaintiff did in fact offer to return all the corn, the purchase price of which he seeks to recover. The fact that plaintiff resold some of the corn for value, as, for example, the 300 cases shipped to a firm at Neosho, Mo., and did not and could not return that corn, makes no difference here, since plaintiff is not seeking to and has not re-

covered anything for that corn. While the general rule is that one who seeks to rescind a contract must return, or offer to return, all that he has received under it, and cannot keep part and return part (9 Cyc. 437), yet this case falls under the well-known exception to such general rule that such rule does not apply to severable or divisible contracts. [2 Black on Rescission and Cancellation, section 585.]

Nor does this rule apply to contracts for sale of goods to be delivered in installments at separate times and places, especially where the goods sold are themselves easily divided and of uniform kind and quality. [2 Black on Rescission and Cancellation, section 586; Sigerson v. Harker, 15 Mo. 101; Grafeman Dairy Co. v. St. Louis Dairy Co., 96 Mo. App. 495. 503, 70 S. W. 390.]

In 6 R. C. L., 939, this is said: "In cases where, acting in good faith, property has been so changed or lost that it cannot be restored in specie, and where its value is capable of being ascertained, a party entitled to do so may rescind a contract, by tendering the money equivalent of the property in question. There may be a rescission of contracts for the sale or exchange of personal property, which are to be executed by a delivery in parcels through a period of time, or, as sometimes expressed, where the contract is continuous. In such cases it often happens that the portions delivered are soon consumed, or disposed of, and cannot be restored. Hence many cases of this description have occurred, where, for causes accruing during the progress of execution, one party has been permitted to rescind the contract, without any restoration of what had been delivered or received under it."

The contract in this case is clearly within these exceptions. It is a contract for the sale of 2,000 cases of No. 2 Standard corn, two dozen cans to the case. Defendant had purchased this corn by this same description from the canning company manufacturing

same. The contract between plaintiff and defendant referred to the original purchase contract, and was subject to its terms. Defendant even contends that the contract with plaintiff was a mere assignment to plaintiff of its contract with the manufacturer. As both plaintiff and defendant are wholesale grocers, each purchased for the purpose of resale. Each sale was at a specific price per case, and not for a lump-sum. Each contract provided for a reduction in quantity of 25 per cent. without liability for damages, and a further reduction of 25 per cent. more at a liquidated damage of 10 cents per case. Only 1,500 cases were delivered under the contracts, and the purchase price was based on the amount delivered and the price per case. The price was f. o. b. factory, and delivery was to be made at any time during the season, in any quantity desired, and to be shipped to any and as many points and in as many shipments as the purchaser desired. In fact neither the plaintiff nor defendant ever had more than constructive possession of this corn, and same was shipped by the manufacturer direct to the customers of plaintiff, who in turn shipped it at different times and to widely separated points, and these customers discovered the bad condition of the corn and refused to pay for same. The plaintiff tendered back to defendant the corn thus rejected, and seeks only to make itself whole for the corn thus rejected. This was the course of dealing with the parties contemplated, and the defendant must be held to have known that one shipment of corn might prove good and satisfactory and another shipment, made at another time to another customer and place, might be worthless and be rejected. The law is correctly declared in Sigerson v. Harker, 15 Mo. 101, as follows:

"We are aware that there may be sales with warranty, when the articles sold are to be delivered, not at once, but continuously, from time to time. In such cases, the receiving of a portion of the articles which correspond with the description would not compel the

vendee to accept others which are deficient in quality, especially in cases where the portion received has been in any way appropriated, or placed in a condition which rendered a return of it inconvenient.''

If the contract in this case is not a severable one, it would be hard to imagine one that would be. The corn was sold for the purpose of resale in varying amounts, and of necessity each resale must stand or fall on the merits of the goods, delivered on such resale. The contract was thus a severable one, and the purchaser was only required to return, or offer to return, the goods for which he was asking a return of the purchase price. The judgment should be affirmed. The opinion of the majority being, in my judgment, in conflict with the rule as declared by the Supreme Court in the case of Sigerson v. Harker, 15 Mo. 101, I ask that the cause be certified to the Supreme Court for final determination.